**FILED** KB

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DEC 17 2025

MITCHELL R. ELFERS
CLERK OF COURT

ANTHONY J. STONECIPHER,
CLAUDENE STONECIPHER,
VANESSA STONECIPHER, a minor, by and through her next friend and father,
ANTHONY J. STONECIPHER,
Plaintiffs,

v.

Civil Action No. 25 cv 1262 DLM

CITY OF ALAMOGORDO,
ALAMOGORDO POLICE DEPARTMENT,
**OFFICER TORRES,** Individually and in his Official Capacity,
**OFFICER RINCON,** Individually and in his Official Capacity,
**OFFICER / DETECTIVE SILVA,** Individually and in his Official Capacity,
**THE HON. DANIEL BRYANT,** Individually and in his Official Capacity,
**THE HON. STEVEN OCHOA,** Individually and in his Official Capacity,
**THE HON. ANGIE SCHNEIDER,** Individually and in her Official Capacity,
**BRYAN C. GARCIA** Individually and in his Official Capacity,
**JESSICA L. CZAJKOWSKI** Individually and in her Official Capacity,
**NMSIF**
**BRANDON HECKLER** Individually and in his Official Capacity,
**12TH JUDICIAL DISTRICT CLERK'S OFFICE,**
**12TH JUDICIAL DISTRICT ADA COORDINATOR PHIL HEFTNER** Individually and in his Official Capacity,
**THE NEW MEXICO ATTORNEY GENERAL**, Individually and in his Official Capacity,
**THE STATE OF NEW MEXICO,**
**JOHN DOES 1–5,** Individually and in their Official Capacities,
**JANE DOES 1–5,** Individually and in their Official Capacities,
Defendants.

**OMNIBUS COMPLAINT FOR DAMAGES VIOLATION OF CIVIL RIGHTS TO THE LEVEL OF A CAPITAL LEVEL OFFENSE OF 18 U.S.C. 242, SYSTEMATIC VIOLATION OF AMERICANS WITH DISABTIES ACT AGAINST DISABLED VETERAN, KIDNAPPING AND SEXUAL ASSAULT OF 9 YEAR OLD CHILD BY EMPLOYEES OF THE CITY OF ALAMOGORDO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, PROTECTIVE INJUNCTIVE RELIEF FOR PLAINTIFFS , AND DECLARATORY RELIEF**

42 U.S.C. § 1983 – 42 U.S.C. § 12132 – 28 C.F.R. Part 35 – 42 U.S.C. § 1985(3) – Civil Rights
Conspiracy & RICO CLAIM UNDER 18 U.S.C. § 1962(c)
Fourth, Fifth, Sixth, and Fourteenth Amendments
Title II ADA – Rehabilitation Act – Due Process – Equal Protection
Monell Liability – Judicial Misconduct – ADA Injunction

**COMES NOW** Plaintiff **Anthony J. Stonecipher**, appearing **pro se**, together with Plaintiffs **Claudene Stonecipher** and **Vanessa Stonecipher, a minor, by and through her next friend and father, Anthony J. Stonecipher**, and hereby bring this civil action for damages, declaratory relief, and emergency injunctive relief, **not based on allegations, but on judicially noticeable court records, sworn statements, official police documents, Defendant-created records, transcripts, and unaltered video and audio evidence which establish the following facts:**

## PREAMBLE

619 pages, 357 undisputable violations of federal rights proven on the record.

This lawsuit is not based on mere violations of the **spirit** of the law, but instead on a clear, self-verifying account of defendants working in tandem to **violate the black letter of the law** on the record.

I am a **father** and a **100% disabled veteran**, capable of receiving reasonable accommodations at a store like Walmart, yet when I need my **federally protected rights** the most—when I am fighting for **custody of my daughter**, the most important thing in my life—I am **denied equal access** in the place where I should be afforded those rights: **the courts.**

I have equal access to **eggs and office supplies**, but not to **custody** or **legal redress**. The **Americans with Disabilities Act** guarantees my right to equal access in the courts, yet I have been met with a consistent refusal of ADA accommodations.

- **Judge Stevens** denied my ADA accommodations.
- **Judge Overstreet** denied ADA, competency hearing and discovery, forcing me to perform in court unaccommodated, collapsing from exhaustion, and then fining me three times the lawful maximum.
- **Judge Schneider** denied my ADA request despite a motion being filed, muted me as a pro se defendant, and denied my bond, despite acknowledging my entitlement to bond on the record.
- **Judge Blakenship** dismissed my ADA request as "moot."
- **Judge Ochoa** held hearings without ADA accommodations, then allowed the **City of Alamogordo** to oppose ADA accommodations in an illegal hearing, granting accommodations in improper form, and later violating his own signed ADA order while I suffered from aphasia.

But **Judge Bryant** stands out. In **five separate cases**, he ignored my ADA accommodations, allowed opposing counsel and the **City of Alamogordo** to file objections to my ADA requests, and even made objections in open court about my disability and needs. The **ADA Coordinator** for the Twelfth Judicial District, **Phil Heftner**, was present during these violations, observing without intervening or correcting the **illegal ADA hearing on October 31, 2025.**

It gets worse: the **Alamogordo Police Department (APD)** has consistently denied me access to law enforcement services:

- When I was suffering from **necrosis** in my skull and abandoned by my caregiver, a felony act, the APD refused to intervene.
- When my **service animal** was stolen—an animal valued at $35,000—and I knew who took it, they refused to take action, even though this was a **second-degree felony**.
- I was **maliciously prosecuted** for violating a **temporary protection order** after sending a **cordial settlement offer** in a divorce case, while the **order itself** prohibited my ex-wife from **removing property**, including my **stolen service animal** but no charges for her.

The culmination of these failures led to **Alamogordo employee Jason Fleming** sexually assaulting my daughter, for which he is now serving 45 years in prison.

However, the **retaliation** for demanding **equal protection** under the law reached its peak on **March 19, 2025**. Officers arrived at my home to unlawfully arrest me and **kidnap my child** with no lawful authority, committing the most serious violation of **18 U.S.C. § 242** and a **state felony** of **custodial interference**. When I sought **redress through the courts**, the **judges ratified these felonies** and, post hoc, stripped me of all **custody**—I went from **full custody to zero custody** simply for **following the law**.

The harassment continued. The **City of Alamogordo** fabricated a **reckless driving charge** against me after an uninsured driver hit my truck twice on a **double yellow line**, but the APD **hid exculpatory witnesses**, **shut off body cameras**, and **withheld discovery**, failing to even cite the other driver for **no insurance**. When I filed a **lawsuit** for these violations, the harassment **intensified**, denying me access to the courts altogether. Clerks **refused to file** my affidavit of service, allowed **defaulted parties to file**, and **Garcia Law Group** continued filing in default despite being named as defendants.

In another instance, **Judge Bryant**, with a **motion for recusal** and a **motion to be added as a defendant**, attempted to hide misconduct from the record by ordering it stricken and setting up a **hearing** to usurp the **New Mexico Supreme Court's** authority. **Everywhere I sought assistance**, I was denied: by the NMSC, the **DOJ**, **disciplinary boards**, and even the **Attorney General**.

As a **Veteran**, I firmly believe we, the people, have the duty and right to **hold the government accountable** when it violates the Constitution. **My government is beholden to me**, forbidden from trespassing on the **sacred rights** reserved to the sovereign.

Yet, trespass it did. When government crosses the threshold of a man's **Castle**, when it wages a **17-year siege** against his constitutional rights, his family, and his liberty, the law demands an accounting **befitting the scope of the violation**. **No amount of money** can replace the years of life stolen from a father and daughter.

Thus, we, the Plaintiffs, come before this honorable court to **set right** what has been wronged—**a veteran weakened in flesh but unbroken in will**. We still hold that **the law**, when applied to the rules broken, may be the very device that, through **§1983 & §1962(c)**, finally brings an end to the corruption allowed to persist in the record detailed in this complaint.

Every breath the defendants expend defending the **indefensible**—the very $CO_2$ of their excuses—now feeds the garden of **sanctions** blooming at their feet, thorny reminders of every trespass they dared to make against my Castle and my kin.

**"The Constitution is the guide which I will never abandon."**
— George Washington

## I. INTRODUCTION

This action arises from the FACT that Plaintiff Anthony J. Stonecipher has been repeatedly harassed, discriminated against, unlawfully arrested, and maliciously prosecuted for more than 48 months of his life; systematically denied ADA rights in multiple courts; denied meaningful access to justice; threatened inside a courthouse for using ADA assistive devices; and subjected to felony-level conduct that law enforcement, prosecutors, judges, and even the State Attorney General knew about yet refused to investigate or prosecute. The pattern of misconduct ultimately culminated in the kidnapping and sexual assault of his 9-year-old daughter, giving rise to lawsuit D-1215-CV-2025-219.

Plaintiffs do not make *allegations* here. Plaintiffs instead provide **357 self-authenticating, judicially noticeable, Defendant-created instances of felony conduct, constitutional violations, ADA violations, and misconduct carried out under color of law**.

In that lawsuit, the City of Alamogordo — by and through its agents Garcia Law Group (Bryan C. Garcia and Jessica L. Czajkowski) — defaulted, were added as defendants, and, while in an admitted conflict of interest, continued to harass Mr. Stonecipher, obstruct redress, file unauthorized sur-replies, and engage in further abuses of process while the case was divested to the New Mexico Supreme Court. These actions directly contributed to Plaintiff's daughter's mental-health collapse, including documented suicidal ideation.

**Bryan C. Garcia and Jessica L. Czajkowski** knowingly obstructed redress for civil rights violations so severe they constitute **capital-level offenses under 18 U.S.C. § 242**.

**Judge Daniel Bryant** has repeatedly violated the ADA across multiple dockets, taken no action on admitted perjury committed against Plaintiff (misprision of felony and subornation of perjury), refused to hear motions for stay—even when Plaintiff was abroad and in physical danger—refused to hear motions for sanctions even when unauthorized sur-replies caused medical injury requiring surgical intervention, refused to address default despite more than **three months** of the opposing party failing to plead or defend, issued orders and held hearings while the case was pending in a **Writ of Superintending Control**, and held hearings while knowingly and wantonly violating the ADA.

On **October 31, 2025**, Judge Bryant conducted a hearing in violation of due process, ADA law, federal regulations, and jurisdiction. He usurped the authority of the New Mexico Supreme Court, acted despite a pending recusal motion, and acted while being moved to be added as a defendant in the same case.

## THE TOTAL COLLAPSE OF STATE REMEDIES IN D-1215-CV-2025-219

In D-1215-CV-2025-219, every state-level remedy has failed, leaving the Plaintiff with no avenue of relief except the intervention of this Honorable Federal Court. The case is now procedurally and constitutionally paralyzed. Judge Daniel A. Bryant currently has two formal Motions to Recuse pending against him. He has also been moved to be added as a named defendant due to his direct involvement in the misconduct at issue, his status as a material witness, and his unlawful actions taken under color of state law. Despite these conflicts, Judge Bryant refuses to recuse himself.

While the case is pending before the New Mexico Supreme Court through a Writ of Superintending Control, Judge Bryant has continued to exercise jurisdiction he does not possess. He has set hearings, issued orders, and taken judicial action in direct violation of the automatic divestiture doctrine, the Due Process Clause, and the Americans with Disabilities Act. Under clearly established federal law, a judge whose jurisdiction is suspended by a pending writ may take no further action; yet Judge Bryant continues to do so.

Plaintiff has exhausted every legally recognized remedial pathway available in the State of New Mexico. Plaintiff has:


(**1**) Filed two Writs of Superintending Control in the New Mexico Supreme Court;
(**2**) Attempted to remove or transfer the case due to ADA violations and judicial conflicts;
(**3**) Filed formal complaints with the New Mexico Judicial Standards Commission;
(**4**) Filed complaints with the New Mexico Disciplinary Board;
(**5**) Reported the misconduct to the FBI;
(**6**) Submitted complaints to the United States Department of Justice Civil Rights Division;
(**7**) Submitted complaints to the New Mexico Attorney General;
(**8**) Alerted the New Mexico Administrative Office of the Courts; and
(**9**) Submitted ADA grievances to the Twelfth Judicial District ADA Coordinator.

At every stage, without exception, Plaintiff was refused assistance, ignored, or left without relief. No state agency acted. No judge intervened. No oversight body performed its statutory duty. Instead, the misconduct continues unabated, leaving Plaintiff and his minor child trapped in a judicial system that is openly violating federal law, the ADA, and constitutional guarantees.

The systemic corruption, bias, retaliation, ADA discrimination, and due-process violations in Alamogordo are so entrenched that the state system is incapable of self-

correction. The record demonstrates a complete breakdown of judicial neutrality, a refusal to enforce mandatory procedural rules, and an institutional pattern of protecting state actors at the expense of the Stonecipher family's constitutional rights.

For these reasons, the intervention of an Honorable Federal Judge is not only appropriate but necessary. Only this Court possesses the independence and authority required to halt the ongoing violations, restore the rule of law, and provide the relief that the State of New Mexico has proven unwilling or unable to provide.

**Judge Angie Schneider** 22 March 2021, D-1215-CR-202100061 ignored a 5 March 2021 filed ADA motion and a filed entry of appearance, held a hearing without ADA accommodations, muted Mr. Stonecipher, allowed the State to make false allegations, and then unlawfully denied bond even though Plaintiff was entitled to bond.

**Judge Steven Ochoa** 2024-2025 D-1215-LR-202400009 appeal of CASE NO. 2024-00160-TR held multiple hearings while a pending ADA motion sat unaddressed; when he finally granted ADA accommodations, he violated his own orders in multiple hearings, culminating on **March 28, 2025** when he continued proceedings while Plaintiff was aphasic—after Plaintiff's own attorney stated on the record that Mr. Stonecipher **could not assist in his own defense**. Judge Ochoa then took over the expungement D-1215-EX-202500012 case filed by Mr. Stonecipher despite being explicitly named in the **Peremptory Motion of Excusal** filed with that expungement petition. On **November 3, 2025**, Judge Ochoa set a hearing for **January 7, 2026** in the expungement matter, without ADA accommodations, even though the ADA motion was filed on **September 15, 2025**, and the State filed a **Notice of Non-Objection** on **October 27, 2025**. Under these circumstances, Judge Ochoa was required to grant the expungement administratively.

**Judge Overstreet** CASE NO. 2024-00160-TR held hearings without ADA accommodations on **May 13, 2024**, denied required ADA accommodations, denied a competency hearing despite Plaintiff being incompetent to stand trial without ADA accommodations as a pro se defendant, forced Plaintiff to argue a continuance while aphasic and collapsing multiple times, and continued proceedings even while Plaintiff required wheelchair evacuation and neighbor transport. Judge Overstreet conducted an unfair trial knowing discovery was incomplete, exculpatory evidence had been withheld, and Giglio evidence such as the CAD report had been suppressed. He then found Plaintiff guilty and issued an excessive fine of **$321**, triple the statutory maximum for a first-time reckless driving offense.

During the appeal of that conviction, **Judge Ochoa** threatened a **$500** fine at the arraignment (held without ADA accommodations) on **January 22, 2024**. The reckless driving case—which involved Plaintiff being struck twice by an uninsured vehicle illegally passing on a double-yellow line into the far-right lane—was **maliciously prosecuted for 19 months** until the new City Prosecutor dismissed it on **August 12, 2025** (CLS: Nolle Prosequi), following **Ashley Smith's** removal from the case.

**On September 22, 2008**, Officer **David McColley** responded to a break-in at Plaintiff's home and falsely reported that Plaintiff owned "assault rifles" to place negative implication on lawful firearm ownership.

**On May 18, 2010**, the ATF conducted a full raid of Plaintiff's home based on a **false claim of a 2007 domestic violence conviction**, seizing firearms, ammunition, reloading supplies, and exploding targets. Plaintiff had no such conviction, and **Case No. 10-MJ-1487** was quickly dismissed. Plaintiff then filed **D-1215-CV-2011-00021**, removed as **Stonecipher v. Valles**, later decided in **759 F.3d 1134 (10th Cir. 2014)**. The Tenth Circuit confirmed Plaintiff had **never been convicted** of disqualifying domestic violence, but granted officers qualified immunity for a "reasonable mistake."

**On June 11, 2010**, in Case No. **1-10-007382**, Officer **J. Watts** documented that ATF agents **stole one of Plaintiff's firearms** by seizing it, failing to record it on the search warrant inventory, and never returning it. Watts reported only that the firearm was "entered into NCIC," and **no further action was taken**.

In Case No. **1-11-013599**, Officer **Rock Ernest** documented that on **October 28, 2011**, **Melissa Stonecipher (NKA Moore)** and her attorney **Raymond VanArnam** violated a Temporary Domestic Order in **D-1215-DM-2011-461** by kicking in Plaintiff's door at 18:00 hours, after an earlier attempt at 14:00 was stopped by Michelle Mitchell, Plaintiff's then-roommate. Officers were given surveillance footage showing VanArnam—who famously caused **State v. Breit, 930 P.2d 792 (1996)**—yet refused to prosecute or investigate.

On **January 31, 2012**, Officer Ernest wrote:
"I attempted to contact Mr. VanArnam and Ms. Stonecipher… left messages… neither returned my calls… my next step was to go to Mr. VanArnam's office…"
The police station (700 Virginia Ave.) and VanArnam's office (1200 Indiana) are **six blocks apart**, yet the officer claimed he was "unable to contact" them. Plaintiff was forced to pay attorney **Freda Howard McSwane $11,000** to get Roswell State Police to issue warrants for Melissa and VanArnam. The crimes were so outrageous they appeared on **Good Morning America** and **World's Dumbest Criminals, Season 14 Episode 6**. Alamogordo still refused prosecution — a clear pattern of deliberate indifference.

**Officer Chris Hughs and Officer Eric Smith**, 2012 employed by the City of Alamogordo, unlawfully arrested Mr. Stonecipher, Municipal court violated the ADA, and maliciously prosecuted Anthony Stonecipher for **567 days** before dismissal, leading to the federal lawsuit **D-1215-CV-2015-00374**, later removed as **2:2015-cv-00720**, which the City settled. This occurred **just days after Plaintiff received the settlement check** officers retaliated trespassing into Plaintiff back yard inside a 8ft privacy fence without warrant without even knocking.

In **Case No. 1-12-002721** (March 8, 2012), Officer **David Moon** searched Plaintiff for weapons based on false allegations by Melissa, and falsely claimed Plaintiff had a "2007

Domestic Assault conviction." This was **two years after Case 10-MJ-1487 proved no such conviction existed**.

By contrast, in **Case No. 1-12-010258** (August 25, 2012), Officer **Clint Corvinus** did **nothing** when Plaintiff's ex-wife—then prohibited from possessing firearms due to a domestic violence plea—entered the police station with her armed husband during a custody exchange. This selective enforcement explains why Plaintiff had been wearing a bulletproof vest since March. **Clint Corvinus** "Per her conditions of release the paper work from Magistrate Court, Mrs. is not to own or posses any weapons of any kind" but concluded constructive possession in her car did not apply.

**Reported By: C. Hughs & Funk, Kenneth – Case No. 1-12-011538 (12/15/2013)**
In conjunction with the malicious prosecution for "singing on a bus," Officers Hughs and Funk attempted to justify additional charges by referencing Plaintiff's service-connected spinal disabilities (L2 compression fracture; L3–L4 bulge and split; L5-S1 stenosis and complete disc deterioration), disabilities caused by military service. Instead of recognizing these as medical impairments, officers used the disabilities as a basis to escalate criminal accusations.

**Reported By: Funk, Kenneth – Case No. 1-14-001626 (02/03/2014, 10:26 AM)**
In 2014, Officer Funk facilitated and assisted Michelle Mitchell in burglarizing Plaintiff's home with full police escort. Mitchell falsely claimed a power outage would prevent detection; however, surveillance footage shows Mitchell physically covering the camera while emptying Plaintiff's safe and removing approximately $5,000 in cash, along with all of Plaintiff's medical records and attorney records. Mitchell then retained attorney Gail Brownfield—the same attorney representing Melissa Moore—who subsequently submitted those stolen privileged attorney records to the 11-706 expert in D-1215-DM-2011-461. Despite clear video evidence, no charges were brought. Mitchell also stole Plaintiff's Buick LeSabre, which was Plaintiff's separate property acquired well before the five-week marriage.

**Reported By: Hildman, Daniel – Case No. 1-14-001760 (02/05/2014, 8:00 AM)**
**Supplemental Report: Mitchell, Justin (02/22/2014)**
Plaintiff's stolen vehicle was returned with police escort, but officers physically blocked Plaintiff from recording the return and prevented him from documenting the identity of the individual in possession of the stolen vehicle. The vehicle was returned severely damaged, containing only one quart of oil, with the engine destroyed, the front grill smashed, and the radiator destroyed. No charges were filed despite undisputed felony-level conduct.

**Case Number: 1-15-000140**
Date of Report: 1/06/15 07:49
Officer Robert Brown and Officer R. Osiecki responded to a false CYFD report. I allowed them into my home; they observed no neglect, healthy sleeping children, firearms secured in safes, and adult beverages stored on shelves seven feet off the floor. This will later stand in heavy contrast to what is coming. **Remember Officer Brown.**

**Case Number: 1-15-003831**
Date of Report: 4/01/15 23:30
Reported By: WAKEFIELD, RICHARD W.
A friend of my wife came to my home seeking sanctuary from her abusive boyfriend, **Donald Mote**, who has a violent criminal history. Mote came to my residence threatening physical violence and threatening to burn my house down.
Officer's statement: *"I advised Mr. Stonecipher I could not place criminal charges on most misdemeanors that occur outside of my presence and advised the video footage did not show any criminal activity as well. I advised I would document the possible threat of criminal damage / arson. Contact with Mr. Mote has not been established regarding the possible personal property damage threat. Nothing further."*
**Violent criminal threatens arson and bodily harm = no protection, no enforcement.**

**Case Number: 1-15-004912**
Date of Report: 4/23/15 22:44
Reported By: OSIECKI, RICHARD and MITCHELL, JUSTIN
I legally traded high-end stereo components for an enclosed trailer. APD arrived and seized the trailer because it was stolen property. When the identity of the person who traded me the stolen trailer—and who also stole $2,000 of stereo equipment—was confirmed through video, license plate, and phone number, APD took the trailer but **refused to prosecute the thief**.
Again, **"unable to make contact"**—the same excuse used when VanArnam kicked in my door on video.

**Case Number: 1-15-012957**
Date of Report: 9/24/15 14:18
Officer: Peter A. Villa
Another false CYFD report. No abuse was found. My video surveillance **proved** Danielle never hit Vanessa, and the recording captured Vanessa telling CYFD: *"my mommy told me to say that."*
In D-1215-DM-2011-461, on April 25, 2016, the court entered this order:
"Neither party shall initiate a call to CYFD without first taking the minor child to her physician to determine if the physician believes that an incident needs to be referred to CYFD. The parties maintain the right to contact law enforcement regarding true emergencies concerning the minor child."
This order becomes highly relevant on **19 March 2021**.

**Case Number: 1-16-003636**
Date of Report: 4/01/16 20:03
Officer: R. Osiecki
I caught a thief in my front yard stealing my children's toys. I captured the crime on **4K video**, identified the thief on Facebook—including identity, residence, and vehicle—and APD still refused to prosecute despite having the crime fully documented.

**Case Number: 1-16-003651**
Date of Report: 4/02/16 11:30

Reported By: MITCHELL, JUSTIN
"I learned on 04/02/2016 at approximately 1130 hours he found a letter on his gold in color Buick car bearing New Mexico plate W1LVK while it was parked in his front driveway. Mr. Kinkle stated he reviewed the letter and observed it to have a picture which appeared to be on Cider. Mr. Kinkle stated there was a letter that was disturbing to him. Mr. Kinkle stated the letter informed him that they had been caught stealing from kids and they wanted there things back."
"I informed Mr. Kinkle Mr. Stonecipher had been trespassed."

To be clear:
Mr. Kinkle—who repeatedly drove his mother around in the same Buick I caught **multiple times casing my street to steal from yards**—was never charged. Yet APD trespassed **me** when I demanded the return of my children's stolen toys.

**Case Number: 1-16-007522**
**Date of Report: 07/03/2016 20:49**
**Reported By: SILVA, ERIC**
Just days after the Hughs/Smith lawsuit settled, Officer Silva — the very same Silva involved in the unlawful 2021 arrest and kidnapping of my child — trespassed into my backyard without a warrant. He ignored a clearly posted **NO TRESPASSING** sign, passed an 8-foot wooden privacy fence, and entered through a latched privacy gate to issue a citation for "fireworks." My children were outside playing with **sparklers**.
Silva had no warrant, no lawful basis, and no exigent circumstances. It was pure retaliation — an officer crossing into the curtilage of a home immediately after the City had been sued and settled for prior misconduct.
The chief of police later tore up the citation after reviewing Silva's own body-camera footage. Even so, APD publicly humiliated me in the local newspaper. Their published statement reads:
"Officer Wakefield and I prepared the citation and proceeded back to 1003 Cedar. Officers did not observe Stonecipher in the backyard but he was heard around a shed in the backyard. Officers made contact with him there. Officer Wakefield and I advised of the citation. Stonecipher appeared to become uncooperative and argumentative. Stonecipher signed the citation and officers departed."
The public statement deliberately omitted the illegal entry, the bypassed fence and gate, the trespass, the lack of warrant, and the fact that they were issuing a retaliatory citation in front of minor children playing with harmless sparklers. They also omitted that the citation was destroyed by the chief **because Silva's conduct was unlawful**.
This was not a "fireworks call."
It was **retaliation**, plain and simple — part of the ongoing pattern of harassment, selective enforcement, and unconstitutional conduct directed at me and my family.

**Case Number: 1-18-011401**
**Date of Report: 10/12/2018 02:28**
**Reported By: SILVA, ERIC, with Officer RINCON — the same officers who kidnapped my daughter Vanessa in 2021**

The report states "Case Status: Cleared by Arrest," yet I was never arrested. **Silva** and **Rincon** issued me a citation for "unreasonable noise" while I was in a Walmart parking lot — a commercial property — where **no residence existed**, and therefore no residential complainant existed as required by statute.

**Silva** wrote:

"I issued Anthony a non-traffic citation for Unreasonable Noise. I learned from **Officer Rincon** who was standing with myself and Anthony,"

There was no complainant from any residence, no lawful basis for enforcement, and no statutory elements met. The City prosecutor reviewed the citation and **dismissed it**, confirming it had no legal basis.

This was **Silva and Rincon** again — targeting me years before the 2021 kidnapping — continuing the pattern of retaliatory and selective enforcement directed at me personally.

**Case Number: 1-19-007632**
**Date of Report: 07/20/2019 18:33**
**Reported By: PUENTE, MAURICIO**

Just **three days** after I returned home from the hospital following removal of my frontal lobes, a man identified as **COLLINS, GAYLON ARCHER** broke into the back of my property. He cut through the backyard and broke open a wooden gun cabinet, attempting to steal multiple firearms. At the time, I was **naked, heavily injured, and sleeping**, with my face still swollen and stapled closed from surgery.

My wife woke me, telling me someone was inside the house.

I grabbed my pistol, confronted the intruder, and chased him off. The moment he saw a naked, freshly-operated-on veteran standing there armed, he dropped all the rifles he was stealing and ran.

Despite having multiple firearms physically removed from the home and dropped by the suspect:

Officers PUENTE, MAURICIO and HEISINGER, MICHAEL **refused to fingerprint the firearms**.
Officers refused standard evidence collection despite a home invasion and attempted theft of multiple weapons.

Hours later, **COLLINS, GAYLON ARCHER returned** to my property.
He cornered my wife in a room with **no exit**, forcing her to defend herself by shooting him with a **taser**.

When officers located **GAYLON COLLINS** just a few blocks away, he had obviously been hit by a taser and later report the "taser ain't shit", directly tying him to the assault and break-in.

Yet despite overwhelming, immediate evidence including video and his injuries:

– He was not immediately prosecuted.
– He did not face sentencing until **2021**, nearly **two years later**.
– During that time, neither the police nor prosecutors took meaningful action to protect my home or my family.

This incident is one of the clearest examples of selective enforcement:
**When I am the victim, nothing is enforced. When I am the accused — even falsely — the system moves instantly.**

Case Number: 1-20-000261
Date of Report: 01/10/2020 11:34
Reported By: WELLES, ROBERT B.

After I lawfully refused CYFD and APD access to my daughter at my home — which is my absolute right under the Fourth Amendment and New Mexico law absent a warrant or exigent circumstances — CYFD worker "Dee Dee" decided to bypass both me and the Constitution by cornering my nine-year-old daughter at her elementary school. She did this without parental consent, without notice, without a court order, and without any legal authority to interrogate a child in the absence of a parent. She then involved APD to pressure the school into allowing an interview they knew they were not entitled to. The report openly admits that CYFD was attempting to force an interview because I had refused at home, and also admits that the allegations were "not serious enough" to justify any charge under § 30-6-4 NMSA. Instead of seeking a warrant — which they knew they could not obtain — they deliberately isolated a minor child on school grounds in an attempt to circumvent clearly established parental rights, constitutional protections, and required judicial process.

**Case Number: 1-20-000440**
**Date of Report: 01/16/2020 16:17**
**Reported By: RINCON, RICHARD**

Six days after the prior CYFD false report, Officer Rincon — the same officer who would later kidnap my daughter and arrest me on March 19, 2021 — arrived at my home to investigate another fabricated CYFD claim. As before, I lawfully refused entry, and as before, I provided him with full video evidence from my home security system. That video showed no signs of any injury whatsoever: Austin walked normally, jogged without limping, interacted normally, showed no distress, and displayed no visible wounds. Rincon's own report confirms this — the footage showed no injury to the knees, no injury to the back of the leg, no limp, no pain response, and no behavior consistent with an assault. Even the forensic interview revealed nothing but an old, healing abrasion

on the **front** of the knee, which disproved the original report claiming a "dragging" injury to the **back** of the leg. Despite possessing video that disproved the claim, despite acknowledging the injury was old, inconsistent, and in the wrong location, and despite having no evidence of any crime, Rincon still forwarded the case to the District Attorney for **Felony Child Abuse under § 30-6-1 NMSA**. This was not an investigation — this was targeted escalation without evidence, part of the same pattern Rincon would use again in 2021 when he unlawfully removed my child and arrested me under another baseless CYFD-triggered accusation.

Case Number: 1-20-001201
Date of Report: 02/14/2020 11:05
Reported By: VAZQUEZ, AMERICA

Just one month after CYFD and APD attempted to corner my daughter Vanessa at school without a parent present, they repeated the same tactic with my stepdaughter Naomi. On February 14, 2020, Officer Vazquez and CYFD arrived at Sunset Hills Elementary School in yet another attempt to access a minor child without notifying either parent, without consent, without a warrant, and without any legal authority. This time, the pretext came from a "courtesy request" by Texas CPS stating that Naomi may have had blood in her underwear — a completely normal occurrence for an 8-year-old girl entering early hormonal development. The hospital in El Paso had already evaluated her and found no tears, no injuries, no evidence of abuse, and closed the case as an informational report. Despite this, APD and CYFD still went to the school to attempt direct access to Naomi behind the backs of both parents.

The report itself admits that the information they had was "very minimal," that CPS could not provide verification, and that APD, CYFD, and the Children's Advocacy Center all determined they did not have enough information to move forward. Yet they still conducted a school-ground contact, without parents, without exigency, without judicial authorization, and without any basis beyond rumor and speculation that had already been disproven.

They did it because this is their pattern: bypass the home, bypass the parents, go to the school, isolate the child, fish for something, trigger § 30-6-1 or § 30-6-4, and escalate — regardless of whether any evidence exists, regardless of what medical professionals determined, and regardless of the constitutional requirements they are obligated to follow.

**On January 21, 2021,** Danielle stole my service dog and disappeared with her new boyfriend, abandoning me while I was a 100% disabled veteran and leaving our nine-year-old daughter as my only caregiver. On January 26, Danielle committed perjury to obtain a Temporary Protection Order, and on January 29 she filed for divorce. Police refused to act on her felony-level violations, including theft of my ADA service animal and abandonment of a disabled spouse.

By late February I was completely overwhelmed—single-parenting, disabled, injured, dealing with necrosis, no caregiver, fighting a divorce, fighting a protection order obtained through fraud, and trying to keep bills and the home running. Jason offered to watch Vanessa for one weekend *before* the March 1 hearing so I could use the weekend to catch up. I accepted because I had no help.

Then on March 1, I was silenced during the TPO hearing due to aphasia and denied the ability to present evidence. The very next day, March 2, 2021, the State filed a criminal case against me based solely on a harmless settlement message — while Danielle faced no consequences for her own criminal violations of the same order.

### MARCH 1, 2021 HEARING (D-1215-DV-2021-12)

On **March 1, 2021**, in **Case No. D-1215-DV-2021-12**, I appeared before **Judge E. Jessen — the first time I had ever stood in front of her in my life**.

During this first appearance:

• I was **never allowed to submit any evidence** — none of the discs, documents, medical records, or slowed-down videos.
• I went into **aphasia from extreme pain**, became unable to speak, and had to **hold up signs** just to communicate.
• Judge Jessen **did not pause**, **did not accommodate**, and **did not verify** whether I could meaningfully participate.
• While I was medically muted, **she allowed Danielle to continue speaking freely**, presenting altered videos and false statements without opposition.
• I was **denied meaningful participation**, **denied the ability to defend myself**, and the hearing proceeded as if nothing was wrong.
• After the hearing, I had to be taken by wheelchair to the **ER**.

This was my very first time ever in front of Judge Jessen — and it immediately set the tone for a series of one-sided rulings based entirely on evidence presented while I was medically incapacitated and silenced.

**Case Number: 21A-01866**
**Date of Report: 01/31/2021 11:39**
**Reported By: OFFICER CLINTON FORD**

This incident was the first falling domino that ultimately set the stage for Vanessa's later sexual assault by City of Alamogordo employee Jason Fleming. On January 31, 2021, after Danielle abandoned the home on January 23rd — removing property, taking my VA-issued medical devices, and leaving me, a 100% permanently disabled veteran suffering from cranial necrosis with a surgical scar spanning ear-to-ear across my face — I contacted law enforcement to report a felony under NMSA 30-6-2, Abandonment of a Dependent. Instead of treating a known felony with the seriousness required by law, officers arrived only to serve me with an order of protection filed by Danielle, the

abandoning party. I attempted to report that she had left me without caregiving support, had deprived me of VA-issued medical equipment required for daily functioning, and had forced our nine-year-old daughter into the position of a caregiver for a disabled adult. Officer Ford took the information, stated he would "consult with a supervisor," and then did nothing. The abandonment, the medical neglect, the removal of essential support systems, and the destabilization of the home were entirely ignored. This moment — the refusal to act, the disregard for a child placed in a caregiving role, and the willingness to enable Danielle's conduct — placed Vanessa directly into a state of vulnerability, instability, and unprotected exposure. Those failures by law enforcement and CYFD created the exact conditions later exploited by City of Alamogordo employee Jason Fleming.

**Case Number: 21A-04364**
**Date of Report: 03/10/2021 19:30**
**Reported By: SERGEANT CHRISTOPH WALLENSTEIN**

This was the second major destabilizing blow. I personally trained my service dog over the course of a full year to mitigate my disabilities — a medically-necessary ADA device that the VA itself recommended. When Danielle abandoned the home, she unlawfully took that trained service dog with her. Only after the theft did I call service-animal organizations to find a replacement, and I learned that a trained service dog comparable to the one I had personally built would cost approximately **$35,000**. That made Danielle's conduct a **second-degree felony larceny** (property value over $20,000) in addition to **Interference With a Qualified Service Animal** under § 28-11-5. Yet APD refused to treat it as a crime. Wallenstein dismissed it as a "civil matter," made no effort to recover the dog, conducted no meaningful investigation, and ignored the felony statutes I physically handed him. I was left without the medical support my disabilities required while simultaneously fighting a protection order built on perjury, a divorce, maintaining a home, raising a child alone, suffering active necrosis, and receiving no assistance from the VA. This failure further destabilized the home and pushed Vanessa even closer to the vulnerability Jason Fleming later exploited.

**Case Number: 21A-04625**
**Date of Report: 03/14/2021 16:21**
**Reported By: POLICE OFFICER ROBERT BROWN**

This was the third straw — the point where I attempted to report the escalating criminal conduct, the perjury, and the abuse of court processes being weaponized against me, and APD once again refused to act. On March 14, 2021, I went to the police department with documented proof that Danielle had committed perjury in an active court proceeding. I provided Officer Brown with physical evidence, electronic evidence, and a full packet of documents establishing that my former wife had knowingly lied under oath. Brown refused to investigate, refused to even review the materials, and told me that APD "does not investigate perjury," despite perjury being a felony offense under New Mexico law. Instead of following the law, he treated it as nothing more than an "information report" and closed the case. I had delivered evidence showing criminal misconduct that directly

impacted my custody, my safety, my disability status, and my ongoing legal cases — and APD chose to do nothing. This intentional refusal to enforce the law allowed Danielle's false narrative to continue unchecked, emboldened her to escalate, and further destabilized the environment just days before officers illegally entered my home, seized my child, and arrested me on March 19, 2021.

**Case Number:** 21A-04971
**Date of Report:** 03/19/2021 13:06
**Reported By:** POLICE OFFICER ROBERT TORRES

On **March 19, 2021**, the Alamogordo Police Department initiated a CYFD referral that resulted in officers entering the Plaintiff's property and arresting him without a warrant and without lawful authority to seize his child. Officers **Torres, Edwards**, and **Silva** were present; Officer **Johnson** was listed in the paperwork but did not appear on scene, while **Officer Rincon**—who was present and threatening arrest—was not listed in the official record. Upon arrival, officers demanded the immediate surrender of Plaintiff's nine-year-old daughter for transport. Plaintiff did **not** tell officers they needed to "speak to his attorney," as falsely stated in Torres's report; body-camera footage shows he repeatedly asked for a **warrant**, which officers admitted they did not have. Within minutes, and solely because Plaintiff invoked that right, officers arrested him under NMSA § 30-6-4 despite having no statutory authority to seize a child from a custodial parent without judicial order. Plaintiff was taken to the ground, front-cuffed due to medical disability, and his ADA-required assistive device (his phone, used as a memory prosthesis) was seized mid-recording. The child was then located inside the home and questioned after Plaintiff was removed, with no parent, guardian, or attorney present. The **Probable Cause Statement** misrepresented Plaintiff's statements, omitted the absence of a warrant or court order, and failed to articulate any lawful basis for the custodial seizure or arrest—facts contradicted by the body-cam footage. Plaintiff was transported by ambulance, medically cleared, booked, and jailed, while his daughter was removed from the home and transferred to a third party within hours, all without judicial authorization, due process, or ADA accommodations. These actions formed the foundational events of the malicious prosecution, ADA discrimination, and constitutional violations detailed in the counts that follow.

**Case Number:** 22A-24957
**Date of Report:** 10/27/2022 20:29
**Reported By:** POLICE OFFICER VICTOR MENDOZA

This incident demonstrates the ongoing pattern of APD refusing to conduct even basic investigative steps when *I* am the victim. While I was out of state receiving emergency medical treatment for my cranial infection and surgical complications, an unknown female entered my yard and stole a 100-lb anvil worth approximately $1,100. The entire theft was captured on my 4K surveillance system. The video clearly shows the suspect, her clothing, her movements, the direction of travel, the placement of the anvil into the vehicle, and the vehicle itself at a distance of **approximately 22 feet** from the camera.

Despite the recording being **high-resolution 4K**, Officer Mendoza falsely claimed that "the vehicle make/model and its driver are unidentifiable." This statement is not just inaccurate — it is physically impossible given the clarity and placement of the camera, which is capable of capturing license plates in motion at that same distance. APD made **no effort** to enhance the video, circulate still frames, canvass local pawn shops or scrap yards, check nearby cameras, or run a neighborhood knock. Instead, they immediately labeled the case "Closed/Pending," which in APD practice means "closed with no intention of investigation."

Once again, when I am the reporting victim — even with conclusive video evidence — APD defaults to non-investigation, non-enforcement, and dismissal. In contrast, when false allegations were made *against* me (even without evidence), APD launched full-scale interventions, warrantless actions, arrests, and criminal charges. This contrasting treatment is part of a continuous pattern of discriminatory and selective law enforcement that directly supports my federal claims under § 1983, the ADA, and the Equal Protection Clause.

**Case Number: 24A-01794**
**CAD Call ID: P24C04221**
**Date of Report / Dispatch: 01/22/2024 (07:51–07:53)**
**Reporting Officer: Officer RC Brown**
Incident Classification: Originally dispatched as "Road Rage / Assault," downgraded to "Crash – No Injury"

This incident shows a clear pattern of APD minimizing criminal conduct committed against me and protecting the aggressor. At approximately 07:51 AM, multiple witnesses reported an active vehicular assault involving a white Ford Explorer and my 9 day old silver Toyota Tacoma still with a window sticker. Witnesses told dispatch that the Explorer tried to run me off the road, rammed my vehicle twice, and that I was trapped in my vehicle. The CAD log shows repeated entries describing the Explorer as the aggressor, including road-rage behavior, intentional ramming, and attempts to force my vehicle off the roadway.

The Explorer driver was illegally attempting to pass me on a double-yellow no-passing zone when he struck my vehicle. Physical damage classifications in the crash report confirm that his vehicle suffered heavy damage consistent with being the aggressor, while my Tacoma sustained only moderate damage due to the effective brush guard. Witnesses at the scene identified the white Ford as the vehicle initiating the attack. The Explorer driver also had no valid insurance at the time but received no citation as required by law.

Despite all of this, APD downgraded the event from an assault to a "Crash – No Injury" within minutes of Officer Brown arriving. This downgrade contradicts all witness statements, contradicts the classification of the event by dispatch, and contradicts the physical evidence. It also allowed APD to avoid documenting this as a felony vehicular assault or aggressive driving case.  Though insurance paid me $150,000 for my injuries!

During the investigation, Officer Brown mentioned my lawsuit against the City of Alamogordo, then immediately shut off his body-camera. He did this right after speaking with the most important 911 witness — the man who was standing on the corner and who reported the Explorer ramming me. There is no recorded interview of that witness even though Brown did, in fact, talk to him on scene. This is spoliation of evidence and violates mandatory body-camera requirements. APD also failed to document the witness's information in the crash report, even though he was the first and clearest reporting party.

Instead of identifying the Explorer driver as the primary aggressor, Officer Brown wrote matching reckless-driving citations to both drivers, creating a false equivalence that contradicts the CAD log, witness statements, and the physical evidence while fabricating statements never said. APD again treated me as the problem rather than the victim. The uninsured, illegal-passing, road-raging driver who rammed me twice was treated the same as the person who was attacked.

This incident fits APD's ongoing pattern: when I am the victim, APD downgrades the situation, loses evidence, shut off cameras, ignores witnesses, and refuses to enforce the law. When false allegations are made against me, APD escalates instantly and treats me as guilty without evidence. This selective enforcement, destruction of evidence, and retaliatory conduct supports my federal claims under §1983, the ADA, and the Equal Protection Clause.

## CLERK'S OFFICE MISCONDUCT AND SYSTEMIC DENIAL OF ACCESS

The Twelfth Judicial District Court Clerk's Office has engaged in a consistent and documentable pattern of misconduct across multiple dockets involving me. Their actions have directly obstructed my ability to file, directly impacted litigation outcomes, and repeatedly violated mandatory procedural rules. The misconduct is not isolated — it spans several years, several cases, and multiple categories of filings. The clerks' actions demonstrate systemic bias, unequal treatment, and deliberate interference with my access to the courts.

### 1. Improper Delays in Filing Required Documents (D-1215-CV-2021-00579)
In the 2021 civil complaint for defamation, libel, slander, perjury, and fraud, I filed a Motion/Application for Default after Danielle failed to respond within the required 30 days. Despite being timely and properly submitted, the clerk did not file my default request until February 17, 2022 — two months later. This delay materially harmed the case. Under Rule 1-055(A), default must be entered when a party fails to respond. The clerk's failure allowed Danielle to file documents that should have been prohibited. This delay directly undermined the purpose of default and allowed the opposing party to manipulate the process.

### 2. Refusal to Accept Sealed Filings (D-1215-DM-2011-0461)
On April 2, 2025, the clerk's office refused to accept my sealed filing even though sealed filings are explicitly authorized under Rule 1-079 NMRA. This refusal required me to file

an Amended Emergency Notice documenting the clerk's failure. Meanwhile, in the 2021 civil case, Danielle was allowed to file a sealed document on July 19, 2022 — a document I was not permitted to view and which the court accepted without issue. The double standard is undeniable: opponents are allowed sealed filings, I am not. This is unequal access, selective enforcement, and an ADA violation, as sealed filings are often necessary to protect medical or disability-related information.

### 3. Failure to Properly Enter Default When Opposing Parties Did Not Respond (D-1215-CV-2024-00696; D-1215-CV-2025-219)

In the CCW mandamus case (D-1215-CV-2024-00696), DPS failed to enter an appearance for five months. Under mandatory procedure, the clerk must enter default when a party fails to plead or defend. This never happened. Instead, the clerk allowed DPS to later file a Motion to Dismiss while still in default — something explicitly prohibited under Rule 1-055(A). The clerk's refusal to enforce default directly prevented judgment in my favor and forced months of additional litigation.

In the civil rights lawsuit (D-1215-CV-2025-219), service documents were mishandled and filed late. The clerk delayed entering the Affidavit of Service until April 23, 2025, even though the defendants had been served weeks earlier and even acknowledged receipt. This allowed the defendants to avoid the procedural consequences of default and shielded their attorneys from having their filings stricken. When Judge Bryant later struck the service entry to protect defaulting defendants, it was only possible because the clerk had mishandled the record to begin with.

### 4. Selective Acceptance and Rejection of Filings

Across cases, the clerk routinely accepts filings from opposing parties that violate procedural rules, while rejecting or delaying my filings even when they comply with the law. Rhodes was permitted to file multiple unauthorized surreplies, none of which were returned or rejected. These filings triggered additional responses from me, causing physical injury due to my disability and the dangerous conditions I repeatedly warned the court about. Meanwhile, multiple filings from me — including sealed documents, ADA notices, and emergency pleadings — were delayed, returned, or questioned.

### 5. Failure to Docket Time-Sensitive Motions, Resulting in Harm

In several cases, including the custody case (D-1215-DM-2011-0461), stay motions and ADA motions were not docketed promptly. This caused hearings to proceed despite pending motions that should have paused the case. In the mandamus case, the clerk delayed docketing critical ADA filings, contributing to the unlawful March 12, 2025 hearing held with no ADA accommodations. These delays are not clerical errors — they are ADA violations and due process violations.

### 6. Failure to Provide ADA-Compliant Access Through Filing Procedures

Under Title II of the ADA, clerks are administrative officers who must ensure disabled litigants have equal access to filing processes. Instead:
– The clerk refused sealed filings that contained disability-related information.
– The clerk delayed ADA motions, making them ineffective.

– The clerk contributed to scheduling hearings before ADA issues were addressed.
– The clerk imposed procedural barriers on me that were not imposed on non-disabled litigants.

These actions denied me equal access to the court system and caused foreseeable harm, particularly when their delays forced me to climb through dangerous terrain in the Philippines to respond to filings that should never have been accepted.

## 7. Clerks Participating in Shielding Judicial Misconduct
In multiple cases, clerk actions enabled or amplified Judge Bryant's violations:
– Delayed docketing allowed the judge to claim ignorance of filings.
– Refusal to accept sealed filings undermined ADA accommodations.
– Failure to enter default protected defaulting government defendants.
– Selective acceptance of prohibited filings enabled Rhodes to weaponize surreplies.

The clerks' conduct is part of the systemic breakdown of procedural fairness. Their pattern of delay, refusal, selective enforcement, and mishandling of filings has directly contributed to ADA violations, due process violations, and obstruction of justice.

## 8. Cases Impacted by Clerk Misconduct
The clerk's actions appear repeatedly in:
– D-1215-CV-2021-00579 (default delays, selective sealed filings)
– D-1215-DM-2011-0461 (refusal to accept sealed filings, docketing obstruction)
– D-1215-CV-2024-00696 (failure to enter default against DPS, ADA motion mishandling)
– D-1215-CV-2025-219 (service mishandling, shielding defaulting defendants)

Across each case, the clerks' failures are not clerical in nature — they directly affect rights, timelines, and legal outcomes. Under Forrester v. White, these are administrative acts, not judicial acts, and are not protected by immunity.

## Clerk Delays, Default Failures, and Service Mishandling Across Multiple Cases

The clerk's office has repeatedly failed to perform mandatory ministerial duties in several of my cases. These failures include months-long delays in processing filings, refusal to enter default when required, and improper handling of service documents — all of which directly changed case outcomes.

In **Case D-1215-CV-2021-00579**, my Motion for Default was held for over two months. Danielle was served on October 9, 2021, yet the clerk did not file my Motion/Application for Default until February 17, 2022 — even though default was mandatory under Rule 1-055(A) and she was prohibited from filing anything under Rogers v. Lyle Adjustment Co. (1962). Despite this, the clerk allowed Danielle to file a sealed document on July 19, 2022, while later refusing to accept my sealed filings in **Case D-1215-DM-2011-461** on April 2, 2025. This demonstrates unequal treatment and selective enforcement of filing rules.

In **Case D-1215-CV-2024-00696** (DPS CCW mandamus case), the clerk failed to enter default even though DPS did not appear, answer, or defend for five months. Instead of entering default as required, the clerk accepted a Motion to Dismiss filed by DPS while they were still in default — something expressly prohibited unless a Rule 1-055(C) motion to set aside default is granted. No such motion was ever filed. The case was only "resolved" because DPS eventually issued my CCW, not because the court or clerk followed the law.

In **Case D-1215-CV-2025-00219**, the clerk docketed the Affidavit of Service late, which created confusion in the record and enabled opposing parties to avoid the consequences of default. These repeated administrative failures — delayed filings, refusal to accept sealed filings, and failure to enter default — show a systemic pattern of clerk misconduct that consistently harms only one litigant: me.  Judge Byant later hid this crime by striking the document 17 October 2025 without any lawful authority to do so.

## 31 OCTOBER 2025 — JUDGE BRYANT'S KNOWING AND WILLFUL MISCONDUCT Case D-1215-CV-2025-00219

On October 31, 2025, Judge Daniel A. Bryant conducted a hearing that he knew was unlawful before it began. The record establishes that, prior to the hearing, Judge Bryant had actual written notice of multiple jurisdictional and statutory bars prohibiting him from taking any action in the case. Specifically:

(1) **D-1215-CV-2025-00219** ADA Motion for Reasonable Accommodations, filed April 23, 2025, remained unresolved;

(2) **D-1215-CV-2025-00219** Motion to Recuse naming Judge Bryant, filed August 8, 2025, remained pending;

(3) **D-1215-CV-2025-00219** Motion to Add Judge Bryant as a Defendant, filed August 11, 2025, remained pending;

(4) **S-1-SC-41127** Writ of Superintending Control had been filed with the New Mexico Supreme Court on October 3, 2025; and

(5) **S-1-SC-41127** Emergency Motion for Stay due to suicide risk had been filed in the Supreme Court on October 22, 2025 and remained pending at the time of the hearing.

Despite having explicit, advance notice of each of these jurisdictional defects, Judge Bryant proceeded anyway.

Judge Bryant knew he was violating **Rule 21-211 NMRA,** which makes recusal mandatory under circumstances where a judge's impartiality might reasonably be questioned. Proceeding while a recusal motion naming him was pending was not discretionary; it was prohibited. He nevertheless set and conducted the hearing.

Judge Bryant also knew that he could not preside over a case in which a motion to add him as a defendant was unresolved. By continuing to act in a case where his own personal liability was at issue, he knowingly violated due process and the foundational rule that no judge may sit in judgment of his own cause.

Judge Bryant further knew that the filing of a Writ of Superintending Control divested the district court of jurisdiction until the New Mexico Supreme Court acted. The law on this point is clear: once the writ is docketed, the lower court must cease all proceedings. Bryant proceeded anyway, knowingly exceeding his jurisdiction.

Judge Bryant also knew that conducting a hearing without ruling on the pending ADA motion would violate Title II of the ADA and deny the Plaintiff meaningful access to the court. For more than six months he had refused to rule on the ADA motion. He was expressly notified in writing that holding the October 31 hearing without accommodations would violate federal law. He ignored the ADA, ignored the warnings, and held the hearing anyway.

He further knew he was prohibited from administering oaths, taking testimony, or exercising judicial authority while a recusal motion and a motion to add him as a defendant were pending. He nevertheless acted in a judicial capacity throughout the hearing.

Judge Bryant also knew he could not act while the Supreme Court's supervisory jurisdiction was active. He knowingly disregarded that limitation and continued to exercise authority he did not possess.

Finally, Judge Bryant knew he was placing a disabled litigant in a position where participation was impossible without accommodations. He knew the Plaintiff had a documented brain injury requiring assistive devices and modified hearing procedures. He nevertheless compelled participation without providing a single accommodation.

The Plaintiff placed Judge Bryant on explicit notice of every one of these violations in writing before the hearing. On October 27, 2025, the Plaintiff filed a Notice warning that holding the hearing would constitute willful violations of federal and state law and that the matter would be reported to the Attorney General and the U.S. Department of Justice. Despite receiving this written warning, Judge Bryant knowingly proceeded.

The October 31, 2025 hearing was not the result of mistake, oversight, or confusion. It was a deliberate, knowing, and willful exercise of unlawful authority in violation of the ADA, due process, judicial-disqualification rules, and the supervisory power of the New Mexico Supreme Court. Judge Bryant acted under color of state law, with actual knowledge that each step he took was unlawful.

## CONCLUSION FOR PLAINTIFF ANTHONY J. STONECIPHER

The foregoing summary encompasses more than a decade of documented, systemic misconduct directed at Plaintiff Anthony J. Stonecipher. Across every category of state function—policing, prosecution, judicial action, clerical administration, ADA compliance, and child-protection procedures—the pattern is the same: when felonies are committed *against* Mr. Stonecipher, there is no enforcement; when false or unsupported allegations are made *about* him, enforcement is immediate, aggressive, and unlawful.

At every stage, the City of Alamogordo, its officers, its prosecutors, and its affiliated state actors have demonstrated deliberate indifference to Plaintiff's safety, rights, and disability. Home invasions, burglaries, threats of arson, theft of a trained ADA service animal, physical assaults, and documented perjury were ignored. Even after an armed intruder returned to the Stonecipher home on the same day as an attempted burglary, no meaningful action was taken until Mrs. Stonecipher was forced to defend herself. The City's consistent refusal to act placed the Stonecipher family in repeated danger, culminating in life-threatening events that would never have occurred had law enforcement performed even the most basic duties required by law.

During the same years, Plaintiff was maliciously prosecuted in 2012, 2016, 2018, twice in 2021, and again in 2024—each time on charges that were dismissed, disproven by video, unsupported by statute, or manufactured through selective enforcement. These prosecutions were not isolated errors but part of a documented pattern of retaliation, discrimination, and constitutional violations.

Judges throughout the Twelfth Judicial District repeatedly violated the Americans with Disabilities Act, holding hearings without ADA accommodations, proceeding while Plaintiff was aphasic or medically incapacitated, denying bond to which Plaintiff was legally entitled, and taking judicial action while lacking jurisdiction. This includes the egregious conduct of March 19, 2021, when officers unlawfully arrested Plaintiff without a warrant and kidnapped his minor child without judicial authorization or lawful cause. That singular event—executed through unconstitutional seizure, fabricated probable cause, ADA violations, withheld exculpatory evidence, and deliberate interference with Plaintiff's recording device—stands as one of the clearest Fourth and Fourteenth Amendment violations presented to this Court.

The record now before this Honorable Federal Court leaves no doubt:
State remedies have collapsed.
Federal intervention is required.
The harms to Plaintiff Anthony Stonecipher are ongoing, irreparable, and the direct result of systemic constitutional violations committed under color of law.

## II. INTRODUCTION FOR PLAINTIFF VANESSA EMILY STONECIPHER, BORN OCTOBER 5, 2011

Plaintiff Vanessa Emily Stonecipher has been harmed for her entire life by the systemic misconduct of the City of Alamogordo, its police officers, its attorneys, and the state court officials whose unlawful actions repeatedly targeted her father, Anthony J. Stonecipher. Every violation committed against her father directly injured Vanessa, deprived her of stability, and ultimately exposed her to severe trauma, including sexual assault and years of forced separation.

On October 28, 2011, when Vanessa was only 23 days old, her mother Melissa Stonecipher and attorney Raymond VanArnam kicked in the door of Anthony Stonecipher's home—a sole and separate property owned by him. Despite clear evidence

of forced entry and documented violations of a domestic-relations order, the Alamogordo Police Department refused to enforce the law. This was the first of many times that APD's refusal to prosecute crimes against Vanessa's father directly harmed Vanessa herself.

Throughout her childhood, every time the City of Alamogordo or the courts unlawfully targeted, prosecuted, or disabled her father, Vanessa suffered. Legal fees deprived her of food, clothing, and opportunities. When her father was forced to proceed pro se due to financial exhaustion caused by repeated malicious prosecutions, he was isolated from her for long periods of time while preparing the legal filings necessary to defend himself against the City's misconduct.

In early 2021, the City of Alamogordo allowed a catastrophic chain of events to unfold. Danielle Stonecipher abandoned the home, stole Anthony's ADA service animal, committed perjury, and left a 100% disabled veteran with necrosis and multiple brain surgeries to care for a minor child alone. APD refused to act on any of these felony-level crimes, leaving Anthony overwhelmed, medically unstable, and without assistance.

During this period of collapse—created entirely by the City's refusal to enforce the law—City of Alamogordo employee **Jason Fleming**, who worked across the street from Officers Torres and Rincon (the same officers involved in Vanessa's kidnapping), offered to "help" watch Vanessa so Anthony could prepare for court. Fleming used that opportunity to sexually assault Vanessa. The sexual assault is proven in **United States v. Fleming, 2:22-mj-00656-GBW**.

On March 19, 2021, the City of Alamogordo inflicted the second catastrophic trauma: Vanessa was kidnapped by Officers Torres, Rincon, Silva, and others, who arrested her father without a warrant, seized Vanessa without a court order, and transported her out of state more than 600 miles away. She did not see her father again until 2025. This unlawful removal—executed despite body-cam footage proving Anthony had committed no crime—caused lifelong emotional harm.

Since her return, Vanessa has continued to suffer due to the City's ongoing misconduct. The actions of Garcia Law Group in D-1215-CV-2025-219, combined with Judge Bryant's unlawful hearings, ADA violations, and refusal to recuse himself while under multiple conflicts, isolated Vanessa from her father again. The stress, instability, and repeated retraumatization caused by the City's misconduct contributed directly to Vanessa developing suicidal ideation in 2025.

When her father attempted to file an Emergency Stay so he could remain with Vanessa and protect her during her mental-health crisis, the New Mexico Supreme Court refused to act, Judge Bryant acknowledged the suicide risk on the record on October 31, 2025, and the Twelfth Judicial District Clerk's Office refused to file the Emergency Stay in D-1215-CV-2025-219. The same Emergency Stay was properly filed in the expungement case—where the State had already filed a Notice of Non-Objection—yet Judge Ochoa

refused to rule on it and instead set an unlawful hearing for January 2026, again without ADA accommodations.

The harm to Vanessa is immediate, ongoing, and undeniable. A child cannot be separated from her father, cannot watch him be repeatedly arrested, prosecuted, silenced, endangered, and stripped of rights, without being personally and deeply injured. Every constitutional violation committed against Anthony Stonecipher directly harmed Vanessa Stonecipher, and the continuing misconduct of the City of Alamogordo and its agents poses an ongoing danger to her mental health, safety, and well-being.

## III. INTRODUCTION FOR PLAINTIFF CLAUDENE STONECIPHER

Claudene Stonecipher is the quiet, unseen collateral damage to every unlawful act carried out by the City of Alamogordo, its police officers, its attorneys, and the judges who knowingly violated the ADA and proceeded without authority. She has no family here, no friends here, and no support system except for her husband — the same husband the Defendants have isolated in a back room for months at a time, forcing him to spend every waking hour drafting filings just to survive the misconduct being inflicted on him.

While Anthony has been trapped behind a closed door, day and night, fighting lawsuits he did not create, Claudene has lived in isolation. She checks on him every hour because that is all she can do. She watches him lose the ability to speak, reduced to yes/no sign-language when stress triggers his aphasia. She sees him collapse. She sits alone in the living room while he works through the night. She eats alone. She sleeps alone. This is not the life she married into. This is not the marriage she had before March 2025.

Before Defendants' retaliation consumed their home, they had a normal, loving marriage: date nights, shooting together, carnivals, riding at sunset, White Sands trips, movies, laughter, companionship. All of that was taken from her the moment Defendants began flooding the docket with unauthorized filings, retaliatory motions, and actions designed to overwhelm a disabled litigant.

Every time the City of Alamogordo violated the ADA, every time a clerk refused to file an emergency document, every time a judge knowingly held a hearing without jurisdiction, and every time police officers committed misconduct that forced Anthony into yet another legal battle, Claudene paid the price. The harm against Anthony did not end with him — it reached directly into her marriage and into her emotional well-being.

She has lived for months without the presence of her husband, even though he is only twenty feet away. She sits alone in silence while the man she married slowly falls apart under the weight of retaliation and legal abuse.

This is loss of consortium in its purest form: deprivation of companionship, affection, support, and the shared life of a married couple. The Defendants did not just injure

Anthony — they injured the person he comes home to, the person he loves, the person who now lives every day in fear of what the system will do to him next.

This is why Claudene is a Plaintiff. She was harmed too. And the law recognizes her right to stand in this case and demand accountability for the destruction the Defendants have forced into her home.

## RICO CLAIM UNDER 18 U.S.C. § 1962(c) – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### PLAINTIFFS ANTHONY, VANESSA, AND CLAUDENE INCORPORATE ALL 351 ALLEGATIONS IN SAYING:

**LAW VIOLATED:**
• 18 U.S.C. § 1962(c) – RICO, engaging in a pattern of racketeering activity.
• 18 U.S.C. § 1961(1) – Definition of racketeering activity.

**FACT:**

Defendants, including the City of Alamogordo, its employees, judicial officers, law enforcement officers, and attorneys, have engaged in a **coordinated scheme of racketeering** that includes:

1. **Systematic and continuous civil rights violations**, including ADA discrimination, abuse of process, and malicious prosecution.
2. **Obstruction of justice**, including concealment of evidence, denial of due process, and tampering with the court record.
3. **Conspiracy to deny Plaintiff access to justice**, involving coordinated efforts among judicial officers, law enforcement, and attorneys to obstruct Plaintiff's ability to enforce his rights and defend against retaliatory litigation.

These actions form a **pattern of racketeering** under 18 U.S.C. § 1961(5), as they involve multiple predicate acts, including:

1. **Denial of ADA accommodations** (violations of Title II of the ADA).
2. **Perjury**, obstruction of legal processes, and suppression of exculpatory evidence.
3. **Multiple instances of fraud on the court**, false statements under oath, and misrepresentation of records.
4. **Unlawful arrest and kidnapping** in violation of the Fourth Amendment, constituting predicate acts under 18 U.S.C. § 1961(1).
5. **Malicious prosecution** and **retaliation against Plaintiff**, particularly in the context of civil rights actions and disability accommodations.

Defendants' ongoing and systematic misconduct was not isolated but part of a **coordinated and organized effort** to harass, retaliate, and obstruct Plaintiff's legal rights and access to the courts.

**UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201 (CASE NUMBERS)):**

- **Case No. D-1215-DM-2011-0461** (documenting ADA violations and abuse of process).
- **Case No. D-1215-CV-2025-00219** (detailing malicious prosecution and civil rights violations).
- **Police body cam footage** and other documented evidence of unlawful seizure, kidnapping, and obstruction of justice.

## CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA:

- **RICO violation under 18 U.S.C. § 1962(c)** for all Plaintiffs: Plaintiffs have been harmed by the Defendants' ongoing racketeering activity.
- **Fourth Amendment** – Unlawful Seizure for Anthony and Vanessa.
- **Sixth Amendment** – Denial of Right to Fair Trial for Anthony.
- **Fourteenth Amendment** – Equal Protection and Due Process for all Plaintiffs.
- **ADA Title II** – Denial of Equal Access to Justice for Anthony.

## MONELL LIABILITY

Liability under **Monell** applies to the **City of Alamogordo**, the **State of New Mexico**, and **Judicial Defendants**. These entities and individuals have failed to address or intervene in the pattern of racketeering by their employees and agents. The City's and State's actions or inactions form a pattern of discriminatory and retaliatory behavior that was encouraged, facilitated, and tacitly approved by their policies, procedures, or lack thereof. Judicial Defendants, including Judges Bryant, Ochoa, Schneider, and others, directly participated in the misconduct by enabling and perpetuating this coordinated scheme, failing to recuse themselves, and violating their ethical duties.

### Treble Damages:

Given that this is a **RICO claim**, Plaintiffs are entitled to **treble damages**. This means that for each violation, the amount of damages could be tripled. Here's how it would break down:

- **Anthony Stonecipher**: As the primary target of the racketeering activities, he would be entitled to treble damages for civil rights violations, ADA discrimination, and malicious prosecution, including compensation for physical, emotional, and financial harm.
- **Claudene Stonecipher**: She could be entitled to treble damages for loss of consortium, emotional distress, and harm caused by the systemic violations that impacted her relationship with Anthony. The long-term separation and emotional strain would be key factors in her claims.
- **Vanessa Stonecipher**: As a child, she is directly affected by the racketeering actions, including unlawful removal, emotional trauma, and sexual assault. Treble damages would apply to her emotional distress and the harm caused by the negligence of the defendants in protecting her.

Since the actions were deliberate, continuing, and coordinated, **treble damages** are the minimum that should be imposed. Given the scope of the constitutional violations, the ADA discrimination, the multi-year pattern of racketeering activity established in the uncontested record, and the mandatory trebling of damages under 18 U.S.C. § 1964(c), Plaintiff respectfully submits that any sua sponte award of damages should not fall below approximately

**$750,000,000**, which represents the lowest defensible valuation supported by the evidence already before the Court.

## TOLLING OF STATUTE OF LIMITATIONS

The statute of limitations is tolled because the harm has been ongoing in **D-1215-CV-2025-00219** and **D-1215-LR-2024-00009** under **42 U.S.C. § 1985(3)**, and because the Plaintiff was medically incapacitated for most of the limitations period. Tolling is independently supported by judicially noticeable filings across multiple New Mexico court dockets.

In **D-1215-CV-2021-00579**, the record shows only **53 filings over 42 months** (1.2 per month). Under **Rule 11-201**, the Court may take judicial notice of the **09/14/2021 Verified Motion to Allow Substitution of Plaintiff in Event of Death**, documenting:

- failure of Plaintiff's second frontal-approach brain surgery
- an active cerebrospinal-fluid leak
- a scheduled life-threatening cranial operation set for **October 13, 2021**

Since the unlawful arrest on **March 19, 2021**, Plaintiff endured:

- seven months of skull necrosis
- seven months of severe cranial infection
- loss of visa and international immobility due to infection
- eleven months without a forehead
- multiple prolonged and debilitating post-operative complications

Within the four-year window, Plaintiff underwent **four major cranial surgeries**, each requiring full cranial disassembly and long-term recovery—periods of total incapacity consistent with equitable tolling.

Judicially noticeable filings across Plaintiff's dockets confirm these medical crises:

- **07/20/2022** – Notice of Complete Non-Availability (failure of third brain surgery)
- **01/03/2023** – Notice confirming fifth brain surgery on **10/19/2022**
- **11/08/2023** – Stay Order acknowledging the need for surgery and extended recovery

Between **11/08/2023** and **09/30/2024**, the record shows **an 11-month gap** caused by surgical recovery, not delay.

Across the record, the following facts are undisputed:

- six brain surgeries
- four within the limitations period
- approximately eleven months of recovery per surgery

• fourteen months of active cranial infection
• eleven months without skull structure

**Four surgeries × 11 months = 44 months**
**+ 25 months of overlapping infection and incapacity**
**= 69 months of documented disability**

Only **12 months** of tolling is required. The record supports **almost six times** that.

Other dockets confirm the same incapacity pattern.

In **D-1215-DM-2021-00049**:
• **180 filings over 51 months** (3.53/month)
• another **11-month gap** (10/23/2023 → 01/13/2025) directly tied to surgery

In **D-1215-CV-2024-00696** (DPS case):
• 29 filings in six months (4.83/month)

In **D-1215-LR-2024-00009**:
• three transcript volumes compiled between **Jan 22 – May 30, 2024**

Sixty days before the statute expired on the 2021 claims, Plaintiff was struck twice by an uninsured driver. The Alamogordo Police Department:

• charged Plaintiff with reckless driving
• refused to charge the uninsured driver
• referenced Plaintiff's lawsuit on body cam
• deactivated the camera mid-investigation
• stated he would "figure out probable cause later" with city-attorney assistance

These facts appear in the **11/22/2024 Motion to Dismiss (136 pages)** in **D-1215-LR-2024-00009**.

After partial medical recovery:

• In **D-1215-DM-2011-00461**, Plaintiff filed **96 filings in 4.5 months** (24/month).
• Across **2021–2024**, Plaintiff averaged **9.5 filings/month** while disabled.
• During malicious prosecution in 2024, Plaintiff averaged **29.5/month** under extreme strain.
• After **03/12/2025** (DPS case resolved; CCW granted), Plaintiff filed this federal lawsuit at the first moment he had meaningful access.

In **D-1215-CV-2025-00219**:
• **137 filings from March 17 to November 29, 2025** (15.93/month)
• peak capacity of **36.4–38.6 filings/month** across cases during the two weeks after the custody motion

The record proves capacity increased **only after** medical recovery.
If Plaintiff had the capacity earlier, he would have filed earlier.
The record definitively shows he did not.

Further, under **Rule 11-201**, the Court must take notice of the **May 27, 2025 Motion for Leave to File Supplemental Complaint on Behalf of Minor Child, Vanessa Stonecipher**. Vanessa's limitations period is tolled until **2032**, and lawful joinder extends this tolling to both Claudene and Anthony Stonecipher.

Finally, under **Tennessee v. Lane, 541 U.S. 509 (2004)**, the ADA guarantees access to the courts. Plaintiff **has never been afforded meaningful access** in any court. In **D-1215-CV-2025-00219**, as recently as **October 31, 2025**, Plaintiff was forced to proceed despite known ADA needs, aphasia, disability, and pending ADA orders. ADA-based denial of access alone warrants tolling as a matter of law.

Taken together, the record proves:

• ongoing conspiracy and retaliation under **42 U.S.C. § 1985(3)**
• continuous harm extending into 2025
• multiple, overlapping periods of medical incapacity
• complete ADA-based denial of access to courts
• judicially noticeable evidence across multiple cases verifying every fact

**Any statute of limitations is tolled as a matter of law and fact.**
The documentary record overwhelmingly supports equitable tolling and defeats every defense argument as harm is ongoing and on the record of D-1215-cv-2025-219 as recent as 3 December 2025.

## LEGAL STANDARDS

***Matter of Castellano****, 119 N.M. 140 (1995)*
"There need not be clear and convincing evidence to support each and every one of the Commission's evidentiary findings." "Whether the discipline that is appropriate is removal or a lesser sanction is separate from the question of whether the evidence supports a determination that the judge's actions constituted willful judicial misconduct."

***United States v. Hodari D.****, 499 U.S. 621 (1991), citing United States v. Mendenhall, 446 U.S. 544 (1980)*
The U.S. Supreme Court held that a seizure occurs "when, by means of physical force or show of authority, [a person's] freedom of movement is restrained."

***Giglio v. United States****, 405 U.S. 150 (1972)*
"Mooney v. Holohan, 294 U.S. 103, 294 U.S. 112 (1935), made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. This was reaffirmed in Pyle v. Kansas, 317 U.S. 213 (1942). In Napue v. Illinois, 360 U.S. 264 (1959), the Court held,

'The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' Thereafter, Brady v. Maryland, 373 U.S. 83, held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.'"

### NMSA 1978, § 32A-3B-3(A)

A child may be taken into protective custody without a court order only when an officer has reasonable grounds to believe the child:
(1) Has run away from a parent, guardian, or custodian;
(2) Without parental supervision is suffering from illness or injury;
(3) Has been abandoned;
(4) Is endangered by surroundings and removal is necessary to ensure the child's safety;
(5) Is engaged in conduct that would be prostitution if committed by an adult; or
(6) Is a victim of human trafficking.

Summary: Without a court order or one of the listed exigent circumstances, law enforcement has **no lawful authority** to seize a child.

**NMSA 1978, § 30-4-4 (C)**: C. Unlawful interference with custody consists of any person, not having a right to custody, maliciously taking, detaining, concealing or enticing away or failing to return any child with the intent to detain or conceal permanently or for a protracted time that child from any person having a right to custody of that child. Whoever commits unlawful interference with custody is guilty of a fourth degree felony.

Summary: When a government actor interferes with a parent's custodial rights without lawful authority, the act constitutes **felony unlawful interference with custody** under New Mexico law.

## 18 U.S. CODE § 242 - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section **or if such acts include kidnapping or an attempt to kidnap,** aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or **imprisoned for any term of years or for life, or both, or may be sentenced to death.**

**Summary:** The events of **19 March 2021**—which included a warrantless home entry, seizure of a child without lawful authority, physical force, and deprivation of constitutional rights—fall squarely within the most serious category of § 242 criminal exposure.

**NM UJI 14-5121** *"When a person voluntarily does that which the law forbids and declares to be a crime, it is no defense that he did not know that his act was unlawful or that he believed it to be lawful."*

**Fourth Amendment, U.S. Const.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**Payton v. New York | 445 U.S. 573 (1980)** *Held:* The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. Pp. 445 U. S. 583-603.

(a) The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. To be arrested in the home involves not only the invasion attendant to all arrests, but also an invasion of the sanctity of the home, which is too substantial an invasion to allow without a warrant, in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is present. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. Pp 445 U. S. 583-590.

**Monell v. Dept. of Social Services, 436 U.S. 658 (1978).**

"1. In *Monroe v. Pape, supra,* after examining the legislative history of the Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983, and particularly the rejection of the so-called Sherman amendment, the Court held that Congress, in 1871, doubted its constitutional authority to impose civil liability on municipalities, and therefore could not have intended to include municipal bodies within the class of "persons" subject to the Act. Reexamination of this legislative history compels the conclusion that Congress, in 1871, would *not* have thought § 1983 constitutionally infirm if it applied to local governments. In addition, that history confirms that local governments were intended to be included Page 436 U. S. 659 among the "persons" to which § 1983 applies. Accordingly, *Monroe v. Pape* is overruled insofar as it holds that local governments are wholly immune from suit under § 1983. Pp. 436 U. S. 664-689."

"In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such

custom has not received formal approval through the government's official decision making channels. Pp. <u>436 U. S. 690</u>-691."

**Summary:**
The controlling Supreme Court authority expressly holds that:
(1) municipalities *are* "persons" under § 1983,
(2) municipal liability applies to both *official policy* and *unofficial governmental custom*, and
(3) no formal approval is required for liability to attach.

Therefore, the Defendants' statement on page 3 of their post-default Motion to Dismiss — that "Plaintiff failed to state a § 1983 claim because municipalities can only be liable for official policy" — is a direct misrepresentation of controlling federal law and constitutes FRAUD UPON THE COURT.

**New Mexico Civil Rights Act, NMSA 1978, § 41-4A-3**, it is clearly stated:

"In any action or proceeding to enforce a right under the bill of rights of the constitution of New Mexico, the defense of qualified immunity shall not be available."

## FEDERAL QUALIFIED IMMUNITY STANDARD (COPS)

Under federal law, a police officer is entitled to qualified immunity **unless BOTH** of the following are true:

**(1)** The officer violated a constitutional right; **and**
**(2)** The right was **"clearly established"** at the time of the violation.

If both elements are present, qualified immunity is denied.

Controlling Supreme Court authority:

• **Harlow v. Fitzgerald, 457 U.S. 800 (1982)** – establishes the modern qualified-immunity rule.
• **Anderson v. Creighton, 483 U.S. 635 (1987)** – "clearly established" must be defined with specificity.
• **Saucier v. Katz, 533 U.S. 194 (2001)** – articulates the two-step inquiry.
• **Pearson v. Callahan, 555 U.S. 223 (2009)** – courts may address the two steps in any order.

**Title II of the ADA**, 42 U.S.C. § 12132 no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

## SUMMARY JUDGMENT LEGAL STANDARD

**Rule 1-056(C) NMRA / Fed. R. Civ. P. 56(a):**
"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

**Federal Nat'l Mortgage Ass'n v. Trissell**, 2021-NMCA-065, ¶ 16:

"When the record is undisputed... the court is required to grant judgment accordingly."

**Self v. United Parcel Serv., Inc.**, 1998-NMSC-046, ¶ 6, the New Mexico Supreme Court held: "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."

**City of Aztec v. Gurule**, 2010-NMSC-006, ¶ 6, the Court held:

"A court must take judicial notice if requested by a party and that party has furnished the court with the information necessary. Rule 11-201 NMRA."

"It is permissible—indeed required—for our trial and appellate courts to take judicial notice of the law necessary for the resolution of all cases before the courts."

**Martinez v. Metzgar**, 97 N.M. 173 (1981), quoting **Agnew v. Libby**, 53 N.M. 56 (1949):

"The purpose of summary judgment is to hasten the administration of justice and to expedite litigation by avoiding needless trials and to enable one promptly to obtain a judgment by preventing the interposition of frivolous defenses for purpose of delay."

**42 U.S.C. § 1983** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**STATE V. NEMETH, 2001-NMCA-029, 130 N.M. 261, 23 P.3d 936**
"{31} The United States Supreme Court has made it clear that intrusion into the privacy and sanctity of the home by police officers is a 'grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.' Johnson v. United States, 333 U.S. 10, 14 (1948). Such intrusion 'must be strictly circumscribed.' Payton v. New York, 445 U.S. 573, 582 n.17 (1980). The Fourth Amendment applies 'to all invasions on the part of the government and its employes of

the sanctity of a man's home and the privacies of life.' Boyd v. United States, 116 U.S. 616, 630 (1886). The 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' United States v. United States Dist. Ct., 407 U.S. 297, 313 (1972). We must, therefore, conscientiously pause and carefully reflect on any circumstances under which we might 'disregard the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.' Payton, 445 U.S. at 601. See also Oliver v. United States, 466 U.S. 170, 178-79 (1984)."

**STATE V. DUFFY, 1998-NMSC-014, 126 N.M. 132, 967 P.2d 807**
"{70} Though there was probable cause to arrest Duffy, the State still needed to establish that warrantless entry into the mobile home was justified by exigent circumstances. 'Exigent circumstances means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.' The determination is not whether the suspect was in fact intending to harm someone, escape, damage property, or destroy evidence. State v. Chavez, 98 N.M. 61, 63, 644 P.2d 1050, 1052 (Ct. App. 1982). Rather it is 'a determination of whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary.' Corneau, 109 N.M. at 89, 781 P.2d at 1167. If there are exigencies, they must be known by the police prior to entry. Attaway, 117 N.M. at 152, 870 P.2d at 114. Moreover, the presence of exigent circumstances must be supported by specific articulable facts. Chavez, 98 N.M. at 63, 644 P.2d at 1052. The State bears the burden of proving the existence of exigent circumstances. State v. Sanchez, 88 N.M. 378, 382, 540 P.2d 858, 862 (Ct. App. 1975)."

**NMAC § 8.10.3.12(F)(1) – INVESTIGATION REQUIREMENTS (Parents, Guardians, Custodians)**

**A.** The PSD worker shall notify the parent, guardian or custodian **in advance** of the interview with the child **unless** the worker has determined that notification could adversely affect the safety of the child or compromise the investigation.

**B.** If advance notification is not given, PSD **shall notify the parents, guardians or custodians of the interview within 24 hours.**

**C.** The PSD worker shall **identify all legal guardians** of the child.

**D.** The PSD worker shall **interview the parent, guardian or custodian** and collateral contacts or witnesses during the investigation.

**E.** At the time of initial contact, PSD **shall inform the parents, guardian, custodian or alleged perpetrator of the reported allegations** in a manner consistent with laws protecting the reporter.

**F.** At the beginning of the investigation, or prior to beginning an interview with the parent, guardian, or custodian, PSD shall inform the parents, guardians or custodian of the following:

**(1)** That **any PSD interaction is voluntary** prior to filing an abuse and neglect petition.
**(2)** That PSD **has received a report alleging child abuse or neglect** and the **nature of the allegations**.
**(3)** That PSD **is required by law** to investigate screened-in reports.
**(4)** That **only law enforcement can remove a child** who is not in PSD custody, unless a district court issues an **ex parte order** authorizing removal.
**(5)** That investigation findings, decision, and disposition are **confidential** under Section 32A-4-33 NMSA 1978.
**(6)** That information concerning the report and investigation has been **entered into FACTS**.
**(7)** That **other people may be interviewed** in order to complete the investigation.
**(8)** That children age **14 and older** may consent to an interview away from home even without parental consent.

**G.** PSD shall **provide the parent, guardian or custodian with CYFD's complaint-process information**.


## NMSA 1978, § 32A-4-4 — COMPLAINTS; REFERRAL; PRELIMINARY INQUIRY

A. Reports alleging neglect or abuse shall be referred to the department, which **shall conduct an investigation** to determine the best interests of the child with regard to any action to be taken. The name and information regarding the person making the report **shall not be disclosed** absent the consent of the informant or a court order.

B. If a report alleging neglect or abuse meets the criteria established pursuant to Section 32A-4-4.1 NMSA 1978, the department may assign the case to the multilevel response system.

C. During the investigation of a report alleging neglect or abuse, the matter may be referred to another appropriate agency and conferences may be conducted for the purpose of effecting adjustments or agreements that will obviate the necessity for filing a petition. A representative of the department shall, **at the initial time of contact with the party subject to the investigation, advise the party of the reports or allegations made,** in a manner that is consistent with laws protecting the rights of the informant. **The parties shall be advised of their basic rights** and **no party may be compelled** to appear at any conference, to produce any papers or to visit any place. **The investigation shall be completed within a reasonable period of time** from the date the report was made.

D. After completion of the investigation on a neglect or abuse report, the department shall either recommend or refuse to recommend the filing of a petition.

E. When a child is taken into custody, the department **shall file a petition within three days**, unless the provisions of Subsection F of Section 32A-4-7 NMSA 1978 apply, in which case the petition shall be filed within five days.

**Summary**

Officers came to take my child **before any investigation even began**, refused to tell me what the complaint was **until I produced my child**, and **no petition or affidavit was ever filed** — not within the required **3 days**, not within **5 days**, and not within the **1,717 days** between **19 March 2021 and 29 November 2025**.
Despite this, my child was taken from me and never returned, even though **D-1215-DM-2011-0461 (October 2019 order)** awarded **full custody to me**.

## ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATIONS

These are not mere allegations. What follows is a **non-exhaustive, self-authenticating chronicle** of the unlawful actions, constitutional violations, and government abuses inflicted upon the Stonecipher family.
Each entry stands on **documented record**, **official filings**, **court transcripts**, **body-camera footage**, and **judicially noticeable evidence**.

This section establishes a continuous, multi-year pattern of misconduct, harm, and statutory violations that no Defendant can dispute.

## I. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 1
### JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in D-1215-CR-2021-0061

**CASE:** Failure to Address ADA Motion and Proceeding Without Required Accommodations

**CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA**

**FOURTEENTH AMENDMENT — DUE PROCESS**
Anthony: Proceeding with a hearing while refusing to rule on the ADA motion deprived Anthony of meaningful participation, the essence of procedural Due Process.
Claudene: Denying Anthony the ability to participate impaired Claudene's marital and family interests, which are protected by Due Process.
Vanessa: The unlawful proceeding deprived Vanessa of a fair and accurate adjudicative record involving her custodial parent.

**FOURTEENTH AMENDMENT — EQUAL PROTECTION**
Anthony: Anthony was treated differently from non-disabled litigants, who receive full access to proceedings without needing accommodations.
Claudene: The discriminatory treatment toward Anthony resulted in unequal treatment of

Claudene's family and parental interests.

Vanessa: The discrimination against Anthony caused unequal treatment of Vanessa's familial rights compared to similarly-situated children with non-disabled parents.

## 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW

Anthony: Judge Schneider, acting under color of state law, denied federally guaranteed ADA and constitutional rights by refusing to rule on or provide required accommodations.

Claudene: The violation of Anthony's rights directly infringed Claudene's protected marital and familial association rights under § 1983.

Vanessa: The deprivation of accommodations and Due Process denied Vanessa her independent rights to familial association and lawful adjudication.

### LAW VIOLATED:
• Title II of the ADA, 42 U.S.C. § 12132
• 28 C.F.R. § 35.130
• 28 C.F.R. § 35.160
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• U.S. Const. Art. VI — Supremacy Clause
• 42 U.S.C. § 1983

### FACT:
• Plaintiff filed a formal ADA Motion on 5 March 2021 in Case No. D-1215-CR-2021-0061.
• On 22 March 2021, Judge Angie Schneider conducted a hearing while the ADA motion remained pending.
• The court did not acknowledge the ADA motion, did not rule on it, and did not provide any accommodation for Plaintiff's documented, surgically-caused brain disability.
• Plaintiff was therefore unable to meaningfully participate, respond, communicate, or defend himself.

These facts are not disputed by any evidence in the record.

### UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201):
• Docket in D-1215-CR-2021-0061 confirming ADA motion filed 5 March 2021.
• Official courtroom audio 22 March 2021: OTERO DIV IV COURTROOM_20210322-0951.
• **(Attachment A1)** Transcript 22 March 2021 confirming no ruling on the ADA motion, no inquiry, and no accommodations provided.

No contrary evidence exists. No reasonable jury could find otherwise.

## II. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 2
## JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in D-1215-CR-2021-0061

**CASE: Silencing Disabled Litigant by Muting Him Mid-Sentence Despite Pending ADA Motion**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

### FOURTEENTH AMENDMENT — DUE PROCESS
Anthony: Muting a disabled litigant mid-sentence prevented Anthony from correcting false statements, directly denying his right to be heard and to meaningfully participate.
Claudene: Silencing Anthony impaired Claudene's marital and family interests by depriving her of a truthful, accurate proceeding tied to her husband's participation.
Vanessa: Suppressing her father's voice damaged the accuracy of proceedings affecting her family and violated Vanessa's right to a fair and truthful record.

### FOURTEENTH AMENDMENT — EQUAL PROTECTION
Anthony: The mute command imposed a disability-based barrier not applied to similarly-situated non-disabled litigants, denying equal access and participation.
Claudene: Discriminatory silencing of her disabled spouse impaired Claudene's family's legal standing and equal protection rights.
Vanessa: The discriminatory treatment of her disabled parent subjected Vanessa to unequal disability-based harm that a similarly-situated child with a non-disabled parent would not face.

### 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW
Anthony: Judge Schneider, acting under color of state law, used judicial authority to silence a disabled litigant, depriving him of Due Process and ADA rights.
Claudene: The deprivation of Anthony's federally protected rights simultaneously violated Claudene's constitutional rights to marital integrity and familial association.
Vanessa: Muting Anthony and obstructing truthful adjudication deprived Vanessa of her independent rights to familial association and lawful, accurate process.

### LAW VIOLATED:
• Title II of the ADA, 42 U.S.C. § 12132
• 28 C.F.R. § 35.130
• 28 C.F.R. § 35.160
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• U.S. Const. Art. VI — Supremacy Clause
• 42 U.S.C. § 1983

### FACT:
• A formal ADA motion requiring accommodations was filed before the hearing and remained unresolved.
• During the 22 March 2021 hearing, Judge Schneider muted the disabled litigant mid-sentence, stating: "Okay, I'm going to mute you. I don't want you to go any further."
• The mute was used at the precise moment Plaintiff attempted to correct false statements

on the record.
• Plaintiff, who requires ADA accommodations due to a surgically-caused brain disability, was prevented from speaking, responding, and participating.

These facts are uncontested and no evidence contradicts them.

**UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201):**
• **D-1215-CR-2021-0061** Official courtroom audio 22 March 2021: OTERO DIV IV •
**(Attachment A1)** Transcript 22 March 2021 transcript showing the exact moment the judge muted Plaintiff mid-sentence.
• **D-1215-CR-2021-0061 on 5 March 2021** Court docket confirming the ADA motion was filed prior to the hearing and remained unaddressed.

## III. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 3
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061**
**CASE: Refusal to Honor Pro Se Status and Denial of Sixth Amendment Self-Representation Rights**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

**FOURTEENTH AMENDMENT — DUE PROCESS**
Anthony: Judge Schneider violated Anthony's Due Process rights by refusing to honor his pro se Entry of Appearance, silencing him, and preventing him from presenting his own defense.
Claudene: Blocking Anthony's ability to advocate for himself harmed Claudene's marital integrity and deprived her of a fair and truthful proceeding tied to her spouse's participation.
Vanessa: Preventing Anthony from defending himself corrupted the accuracy of proceedings affecting Vanessa's family and violated her right to a lawful adjudication.

**FOURTEENTH AMENDMENT — EQUAL PROTECTION**
Anthony: Similarly-situated pro se litigants are afforded mandatory **Faretta** rights, yet Anthony was muted and denied the ability to proceed.
Claudene: Discriminatory treatment of her disabled spouse diminished Claudene's family's legal standing and impaired her Equal Protection rights.
Vanessa: Vanessa experienced disability-based disparate treatment because her parent was denied protections afforded to non-disabled litigants.

**42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW**
Anthony: Acting under color of state law, Judge Schneider deprived Anthony of established Sixth and Fourteenth Amendment rights by rejecting his valid pro se status.
Claudene: The deprivation of Anthony's constitutional rights also violated Claudene's independent rights to marital integrity and familial association.
Vanessa: The refusal to honor Anthony's self-representation rights deprived Vanessa of her own constitutional rights to familial association and lawful proceedings.

**LAW VIOLATED:**
• Sixth Amendment — Right to Self-Representation (**Faretta v. California**)
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• Title II of the ADA, 42 U.S.C. § 12132
• 28 C.F.R. § 35.130
• 28 C.F.R. § 35.160
• 42 U.S.C. § 1983

**FACT:**
• A pro se Entry of Appearance was filed on 5 March 2021 in **Case No. D-1215-CR-2021-0061**.
• During the 22 March 2021 hearing, Judge Schneider explicitly acknowledged the filing: "I see that there was a pro se appearance filed on 3-5."
• Despite this acknowledgment, the judge refused to allow self-representation, muted the disabled litigant, and deferred matters to another judge.
• Plaintiff was therefore barred from exercising his Sixth Amendment right to represent himself.

These facts are uncontested and no evidence contradicts them.

**UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201):**
• **Case No. D-1215-CR-2021-0061** — Official courtroom audio 22 March 2021: OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3, capturing the judge's acknowledgment of the pro se filing and the refusal to honor it.
• **(Attachment A1)** 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061** confirming the pro se acknowledgment and subsequent denial of Faretta rights.
• **Case No. D-1215-CR-2021-0061** Court docket confirming the pro se Entry of Appearance filed 5 March 2021.

## IV. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 4
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061**
**CASE: Unlawful Denial of Bond After Acknowledging Defendant Was Entitled to Bond**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

**FOURTEENTH AMENDMENT — DUE PROCESS**
Anthony: The judge acknowledged Anthony was entitled to bond, then immediately ordered him held without bond pending a hearing, violating his right to a fair, timely bond determination and his fundamental liberty interest.
Claudene: The unlawful denial of bond impaired Claudene's marital stability, prevented her from supporting her husband's defense, and deprived her of fair and accurate proceedings affecting her life.
Vanessa: The decision to hold Anthony without bond deprived Vanessa of her right to familial integrity during criminal proceedings and corrupted the fairness of proceedings impacting her family.

**FOURTEENTH AMENDMENT — EQUAL PROTECTION**
Anthony: Anthony was treated differently than similarly-situated defendants entitled to bond; no lawful justification existed for the disparate treatment.
Claudene: The discriminatory and arbitrary denial of bond caused unequal treatment of Claudene's familial and marital rights.
Vanessa: Vanessa experienced disparate impact because a similarly-situated child of a non-disabled parent would not have endured an arbitrary, unsupported denial of bond.

**42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW**
Anthony: Acting under color of state law, Judge Schneider deprived Anthony of his Fourteenth Amendment liberty rights by denying bond despite expressly recognizing his entitlement to one.
Claudene: The deprivation of Anthony's constitutional rights simultaneously violated Claudene's own rights to marital integrity and familial association.
Vanessa: The unlawful denial of bond impaired Vanessa's constitutional rights to familial association and lawful adjudication.

**LAW VIOLATED:**
• Sixth Amendment — Right to Self-Representation (Faretta v. California)
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• Title II of the ADA, 42 U.S.C. § 12132
• 28 C.F.R. § 35.130
• 28 C.F.R. § 35.160
• 42 U.S.C. § 1983

**FACT:**
• On 22 March 2021, during proceedings in **Case No. D-1215-CR-2021-0061**, Judge Schneider stated: "I know he's entitled to a bond."
• Immediately afterward, she ordered: "I'm holding him without bond pending a hearing."
• No lawful justification or statutory authority was cited to deny bond.
• Plaintiff was held without bond despite the judge's explicit acknowledgment that bond was required.

These facts are uncontested and remain unsupported by any contrary evidence.

**UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201):**
• **Case No. D-1215-CR-2021-0061** — Official courtroom audio (22 March 2021):
*OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3*, capturing both statements: acknowledgment of entitlement to bond and the order to hold without bond.
• **Case No. D-1215-CR-2021-0061** — **(Attachment A1)** Transcript of 22 March 2021 documenting both statements and the subsequent denial of bond.

• **Case No. D-1215-CR-2021-0061** — Court docket showing no valid legal basis or findings supporting a denial of bond.

## V. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 5
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061 CASE: Failure to Order Mandatory Competency Evaluation Despite Express Concerns Raised on the Record**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

#### FOURTEENTH AMENDMENT — DUE PROCESS
Anthony: The prosecutor's statement — "I have serious doubts that he's competent to represent himself" — triggered a mandatory duty to halt proceedings and order a competency evaluation under NMSA § 31-9-1. Judge Schneider's refusal to stop the hearing or order evaluation violated Anthony's Due Process right to a competency determination before further proceedings.
Claudene: The court's refusal to order a competency review deprived Claudene of a fair proceeding and obstructed her marital stability by forcing proceedings to continue while her disabled husband's competency was in question.
Vanessa: Proceeding despite competency concerns corrupted the fairness and accuracy of proceedings affecting Vanessa's family and violated her right to lawful adjudication involving her custodial parent.

#### FOURTEENTH AMENDMENT — EQUAL PROTECTION
Anthony: By ignoring competency concerns for a disabled litigant, the court treated Anthony differently than similarly-situated non-disabled defendants who receive mandatory evaluations when competency is questioned.
Claudene: The unequal treatment of Anthony based on disability harmed Claudene's independent rights to fair and equal treatment in proceedings affecting her family.
Vanessa: Vanessa experienced disability-based disparate impact because similarly-situated children of non-disabled defendants would not endure proceedings conducted without mandatory competency protections.

#### 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW
Anthony: Acting under color of state law, Judge Schneider deprived Anthony of his federal constitutional rights by refusing to order a competency evaluation despite explicit concerns raised by the prosecution.
Claudene: The deprivation of Anthony's rights simultaneously violated Claudene's rights to marital integrity and familial association by forcing proceedings to continue unlawfully.
Vanessa: The refusal to evaluate competency deprived Vanessa of her constitutional right to meaningful, accurate, and lawful adjudication involving her parent.

#### LAW VIOLATED:
• Sixth Amendment — Right to Counsel (Faretta v. California)

• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• Title II of the ADA, 42 U.S.C. § 12132
• 42 U.S.C. § 1983
• NMSA § 31-9-1 — Mandatory competency evaluation upon reasonable doubt

**FACT:**
• During the 22 March 2021 hearing in **Case No. D-1215-CR-2021-0061**, the prosecutor stated: "I have serious doubts that he's competent to represent himself."
• Judge Schneider acknowledged these concerns but refused to stop the proceeding or order the mandatory competency evaluation required by NMSA § 31-9-1.
• Proceedings continued without determining competency, despite known disability and an unresolved ADA motion.
• Plaintiff was subjected to continued proceedings without the protections required by law.

These facts are uncontested and uncontradicted by any evidence in the record.

**UNDISPUTABLE EVIDENCE (Judicial Notice Rule 201):**
• **Case No. D-1215-CR-2021-0061** — Official courtroom audio (22 March 2021):
*OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3*, capturing the prosecutor's competency concerns and the judge's refusal to order evaluation.
• **(Attachment A1)** — 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061**, confirming the prosecutor's statement and the court's refusal to halt proceedings.
• **Case No. D-1215-CR-2021-0061** — Court docket showing no competency evaluation ordered before or after the proceeding.

## VI. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 6
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061**
**CASE: Disability-Based Discrimination, Failure to Rule on ADA Motion, and Muting Disabled Litigant**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

**FOURTEENTH AMENDMENT — DENIAL OF DUE PROCESS**
Anthony: The court violated Anthony's Due Process rights by denying him ADA accommodations and muting him during the hearing, preventing him from fully participating and compromising his ability to present a defense.
Claudene: The denial of ADA accommodations and silencing of her husband harmed Claudene's rights to familial association and marital integrity by preventing him from defending himself.
Vanessa: Vanessa's Due Process rights were violated when the court's actions prevented her father from effectively participating in the legal process, undermining the fairness of the proceedings and her relationship with him.

## FOURTEENTH AMENDMENT — DENIAL OF EQUAL PROTECTION

Anthony: Anthony was denied Equal Protection because he was treated differently from similarly-situated non-disabled defendants who receive necessary accommodations for effective participation, while he was muted and denied a fair hearing.

Claudene: Claudene's Equal Protection rights were violated by the discriminatory treatment of her disabled spouse, further isolating her and denying her access to a fair legal process.

Vanessa: Vanessa's Equal Protection rights were violated as she experienced disability-based discrimination when her father was denied the same legal opportunities afforded to non-disabled individuals.

## 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW

Anthony: Judge Schneider, acting under color of state law, deprived Anthony of his constitutional and ADA rights by denying accommodations and preventing his participation in his own defense.

Claudene: These actions violated Claudene's rights to marital integrity and familial association by isolating her from meaningful participation in the legal process.

Vanessa: Vanessa was deprived of her constitutional right to a fair and meaningful relationship with her father due to the court's discriminatory actions.

## LAW VIOLATED:

• Fourteenth Amendment — Equal Protection Clause
• Fourteenth Amendment — Due Process Clause
• Title II of the ADA, 42 U.S.C. § 12132
• 28 C.F.R. § 35.130
• 28 C.F.R. § 35.160
• 42 U.S.C. § 1983

## FACT:

• Judge Schneider knew of Anthony's disability and of a pending ADA motion in **Case No. D-1215-CR-2021-0061**.
• She failed to rule on the ADA motion, denied accommodations, and proceeded with the hearing.
• During the hearing, she muted the disabled litigant, preventing him from meaningfully participating in his own defense.
• Anthony was treated differently than non-disabled defendants, who are not denied participation and required accommodations in this manner.

These facts are uncontested and no evidence contradicts them.

## UNDISPUTABLE EVIDENCE (Case No. D-1215-CR-2021-0061, Judicial Notice Rule 201):

• Official courtroom audio from 22 March 2021: *OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3*, capturing the judge's refusal to address accommodations and her muting of Anthony.

• **(Attachment A1)** — 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061**, showing no inquiry, no ruling, and no discussion of the ADA motion, and confirming that Anthony was muted and denied participation.
• Court docket in **Case No. D-1215-CR-2021-0061** showing the ADA motion filed before the hearing and left unresolved.

## VII. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 7
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061 CASE: First Amendment Violation — Muting Litigant to Prevent Correction of False Statements**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

### FIRST AMENDMENT — DENIAL OF RIGHT TO PETITION AND RIGHT TO SPEAK IN OWN DEFENSE
Anthony: When Anthony attempted to correct false statements regarding a restraining order, Judge Schneider silenced him by stating, "I'm going to mute you." This directly violated his First Amendment rights to petition the government and to speak in his own defense during a critical stage of proceedings.
Claudene: By preventing Anthony from speaking, the court harmed Claudene's rights to marital integrity and a fair proceeding, as she was deprived of a truthful and accurate record involving her spouse.
Vanessa: The judge's refusal to allow her father to speak undermined Vanessa's constitutional right to understand and rely on a fair and accurate legal process involving her family.

### 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW
Anthony: Acting under color of state law, Judge Schneider deprived Anthony of his First Amendment rights by muting him and preventing him from correcting the record.
Claudene: The unlawful silencing of Anthony deprived Claudene of her constitutional rights to marital association and meaningful participation in the legal process affecting her family.
Vanessa: By interfering with Anthony's speech, the judge deprived Vanessa of her constitutional right to a fair process and to truthful judicial proceedings involving her father.

### LAW VIOLATED:
• First Amendment — Right to Petition
• First Amendment — Right to Speak in Own Defense
• 42 U.S.C. § 1983

### FACT:
• During the 22 March 2021 hearing in **Case No. D-1215-CR-2021-0061**, Anthony attempted to correct false statements regarding a restraining order.
• Judge Schneider cut him off and stated: "I'm going to mute you," silencing him mid-

sentence.
• This prevented him from correcting the record, petitioning the court, and exercising his right to speak in his own defense.

These facts are uncontested.

## UNDISPUTABLE EVIDENCE (Case No. D-1215-CR-2021-0061, Judicial Notice Rule 201):
• Official courtroom audio (22 March 2021): *OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3* — capturing the moment Judge Schneider muted the Plaintiff.
• **(Attachment A1)** — 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061**, confirming the silencing and the exact wording used by the judge.

No reasonable jury could find that muting a litigant mid-correction is consistent with First Amendment protections.

## VIII. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 8
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061**
**CASE: Unlawful Detention and Denial of Bond in Violation of the Fourth Amendment**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

### FOURTEENTH AMENDMENT — DENIAL OF DUE PROCESS
Anthony: Judge Schneider acknowledged on the record that Anthony was "entitled to a bond" but then detained him without bond, violating his Fourth Amendment and Due Process rights by subjecting him to an unlawful continued seizure.
Claudene: The unlawful detention impaired Claudene's constitutional rights to familial association and marital stability by depriving her of her spouse without lawful authority.
Vanessa: The unlawful detention violated Vanessa's Due Process rights because it interfered with her relationship with her father and disrupted the fairness of proceedings impacting her family.

### FOURTEENTH AMENDMENT — DENIAL OF EQUAL PROTECTION
Anthony: Anthony was denied Equal Protection because similarly-situated non-disabled defendants are granted bond when entitled to bond, while he was detained unlawfully due to disability-based discrimination.
Claudene: The discriminatory detention of her disabled spouse violated Claudene's Equal Protection rights by imposing unequal burdens on her familial and marital interests.
Vanessa: Vanessa suffered unequal treatment because she was denied the ability to maintain a relationship with her father during proceedings, unlike children of non-disabled defendants who are not subjected to such discrimination.

### 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW
Anthony: Judge Schneider, acting under color of state law, deprived Anthony of his

Fourth Amendment protections by unlawfully detaining him without bond despite acknowledging his entitlement to release.

Claudene: The unlawful detention deprived Claudene of her constitutional rights to marital integrity and familial association.

Vanessa: Vanessa's constitutional rights were violated because the unlawful detention deprived her of meaningful access to her father during the pendency of the case.

**LAW VIOLATED:**
• Fourth Amendment — Unlawful Seizure and Detention
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• 42 U.S.C. § 1983

**FACT:**
• On 22 March 2021, Judge Schneider explicitly stated that Anthony was "entitled to a bond."
• Despite acknowledging bond entitlement, she ordered him held without bond pending a hearing.
• This constituted an unlawful continued seizure without lawful authority and without any legal justification recognized under New Mexico law or the U.S. Constitution.

These facts are undisputed and uncontradicted.

**UNDISPUTABLE EVIDENCE (Case No. D-1215-CR-2021-0061, Judicial Notice Rule 201):**
• Official courtroom audio from 22 March 2021: *OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3*, capturing the acknowledgment of bond entitlement and the subsequent unlawful detention order.
• **(Attachment A1)** — 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061**, confirming the statements regarding bond and the order to detain without bond.
• Court docket confirming no lawful basis existed for denying bond.

## IX. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 9
**JUDGE ANGIE SCHNEIDER — 22 MARCH 2021 in Case No. D-1215-CR-2021-0061**
**CASE: Pattern of Intentional Civil-Rights Violations Amounting to Criminal Deprivation of Rights (18 U.S.C. § 242)**

### CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA

### FOURTEENTH AMENDMENT — DENIAL OF DUE PROCESS
Anthony: Judge Schneider deprived Anthony of Due Process by denying ADA accommodations, refusing to rule on the ADA motion, denying self-representation, denying bond, ignoring statutory competency obligations, muting him mid-sentence, and ordering unlawful detention — a pattern of conduct constituting criminal deprivation of rights under 18 U.S.C. § 242.

Claudene: The cumulative violations deprived Claudene of her marital stability, her

ability to support her husband's defense, and her right to a fair proceeding affecting her family.

Vanessa: Vanessa's Due Process rights were violated because the pattern of misconduct corrupted the entire proceeding, impairing her right to truthful judicial processes and a meaningful relationship with her father.

## FOURTEENTH AMENDMENT — DENIAL OF EQUAL PROTECTION

Anthony: Anthony was subjected to discriminatory treatment because he was disabled. Non-disabled defendants are not denied ADA accommodations, not muted in hearings, not deprived of bond after entitlement is acknowledged, and not denied competency review when concerns are raised.

Claudene: The discriminatory treatment of Anthony violated Claudene's Equal Protection rights by imposing unequal burdens on her family due to her husband's disability.

Vanessa: Vanessa suffered disability-based discrimination because the court's violation of her father's rights directly deprived her of constitutional protections afforded to similarly-situated children of non-disabled defendants.

## 42 U.S.C. § 1983 — DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW

Anthony: Judge Schneider, acting under color of state law, deprived Anthony of his constitutional rights by engaging in a pattern of discriminatory, unlawful, and retaliatory actions that collectively violated the ADA, the Sixth Amendment, the Fourth Amendment, and the Fourteenth Amendment.

Claudene: These cumulative unlawful actions violated Claudene's rights to familial association and equal legal treatment.

Vanessa: Vanessa's constitutional rights were violated because the deprivation of her father's rights simultaneously deprived her of fair adjudication and familial integrity.

## LAW VIOLATED:
• 18 U.S.C. § 242 — Criminal Deprivation of Rights
• Fourteenth Amendment — Due Process
• Fourteenth Amendment — Equal Protection
• Sixth Amendment — Self-Representation
• Fourth Amendment — Unlawful Seizure
• Title II of the ADA, 42 U.S.C. § 12132
• 42 U.S.C. § 1983

## FACT:
• During the 22 March 2021 hearing, Judge Schneider:
– Ignored a pending ADA motion
– Denied accommodations
– Muted the disabled litigant mid-sentence
– Refused self-representation despite acknowledging the pro se filing
– Ignored statutory competency obligations
– Acknowledged entitlement to bond but ordered detention without bond
• These actions constitute a pattern of intentional deprivation of federally protected rights.

These facts are uncontested and supported entirely by the court's own record.

**UNDISPUTABLE EVIDENCE (Case No. D-1215-CR-2021-0061, Judicial Notice Rule 201):**
• Official courtroom audio from 22 March 2021: *OTERO DIV IV COURTROOM_20210322-0951_01d71f00e00b0a80.mp3*, capturing each unlawful action.
• **(Attachment A1)** — 22 March 2021 transcript from **Case No. D-1215-CR-2021-0061**, confirming denial of accommodations, refusal to rule, muting, denial of bond, and failure to order competency review.
• Court docket confirming ADA motion filed before the hearing and pro se appearance filed 5 March 2021.


**X. ESTABLISHED UNLAWFUL CONDUCT AND ALLEGATION 10**
**JUDGE STEPHEN P. OCHOA — 28 MARCH 2025 in Case No. D-1215-LR-202400009**
**CASE: Revocation of Signed ADA Accommodations Order and Punishment for Using Court-Authorized Prosthetic Memory Device**

**CONSTITUTIONAL CLAIMS — ANTHONY, CLAUDENE, AND VANESSA**

**FOURTEENTH AMENDMENT — DENIAL OF DUE PROCESS**
Anthony: Judge Ochoa revoked a previously signed ADA accommodations order—without notice, without written findings, and without legal justification—and then chastised Anthony for using the same prosthetic memory device the court had already authorized. This deprived Anthony of Due Process by eliminating the auxiliary aids required for him to communicate and participate meaningfully in the hearing.
Claudene: Revoking ADA accommodations impaired Claudene's rights to familial stability and to a lawful, fair proceeding, because her disabled spouse was stripped of the tools required for communication and participation.
Vanessa: The unlawful revocation harmed Vanessa's Due Process rights because it denied her father the ability to defend himself effectively, directly impairing familial association and the fairness of proceedings affecting her.

**FOURTEENTH AMENDMENT — DENIAL OF EQUAL PROTECTION**
Anthony: Anthony was denied Equal Protection because similarly-situated non-disabled litigants do not require prosthetic memory devices or auxiliary aids simply to participate—and are not punished for using court-approved accommodations. Revoking accommodations selectively targeted his disability.
Claudene: The discriminatory treatment of Anthony based on disability harmed Claudene's equal protection interests by destabilizing her family and imposing unequal burdens on her ability to participate and support her spouse.
Vanessa: By revoking accommodations essential for her father's participation, the court subjected Vanessa to disability-based discrimination that similarly-situated children of non-disabled litigants would not face.